PEOPLE v. CALHOUN

PEOPLE v. CARPENTER

1. SEARCHES AND SEIZURES—WITHOUT A WARRANT—AT POLICE STA-
TION—PROBABLE CAUSE.

Search without a warrant of defendants' car's trunk and seizure
of jackhammers in the trunk of the car was reasonable even
though the search was made at the police station after the
defendants' arrests, where the police officers had observed the
defendants performing several suspicious actions near a rail-
road bridge, saw the defendants carrying articles to the car
and putting them into the trunk, stopped the car and noticed
burglar tools in the car, the defendant driver of the car did
not have any proof of ownership of the car or a driver's
license, the defendants' explanation of what they had been
doing was contrary to what the police had observed and the
officers attempted to pry open the car's trunk at time of the
arrests, but were unable to do so, because the search was begun
contemporaneously with the arrest and the search at the police
station and the arrests were units of an integrated incident.

2. CRIMINAL LAW—MOTOR VEHICLE CODE DEFINITION—USE.

Definitions from the Motor Vehicle Code are not directly appli-
cable to the penal code.

3. CRIMINAL LAW—LARCENY FROM MOTOR VEHICLE—TRAILERS—
PORTABLE AIR COMPRESSOR TRAILER.

Submitting to the jury the question whether the defendants had
committed larceny from a trailer was proper where the defend-
ants allegedly had broken into a portable air compressor trailer,
even though the Motor Vehicle Code defines a trailer as a
vehicle designed for carrying property or persons and the air
compressor trailer was not so designed, because the definitions

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Searches and Seizures § 19.
[2] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 312–346.
[3] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 303–308.
[4] 31 Am Jur 2d, Expert and Opinion Evidence §§ 24–32.

in the Motor Vehicle Code are not directly applicable to the penal code (MCLA §§ 257.73, 750.356).

4. Witnesses — Expert Witnesses — Qualifications — Jackhammers.

Determination that a railroad supervisor who had witnessed and had been a part of the buying and selling of used railroad equipment and who had familiarized himself with the jackhammers allegedly stolen by the defendants was qualified as an expert witness on the value of the jackhammers was not an abuse of discretion.

Appeal from Wayne, Benjamin D. Burdick, J. Submitted Division 1 October 16, 1970, at Marquette. (Docket No. 8119.)    Decided January 26, 1971. Leave to appeal denied July 15, 1971, 385 Mich 767.

James Alva Calhoun and Gordon Eugene Carpenter were convicted of larceny from a motor vehicle and larceny of property worth more than $100.  Defendants appeal.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *Thomas R. Lewis,* Assistant Prosecuting Attorney, for the people.

*Robert E. McCall,* for defendant on appeal.

Before:  Fitzgerald, P. J., and McGregor and O'Hara,* JJ.

Per Curiam.  On May 6, 1968, defendants were charged with larceny from a motor vehicle (a trailer), MCLA § 750.356a (Stat Ann 1954 Rev § 28.588[1]), and larceny of property of a value of more than $100, MCLA § 750.356 (Stat Ann 1970 Cum Supp § 28.588).  A motion prior to trial to sup-

_____
* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

press the evidence was denied and defendants were found guilty in a jury trial on both counts. A motion for new trial was denied, which defendants appeal.

The evidence establishes that, at 12:30 a.m., May 4, 1968, defendants were observed by two uniformed Dearborn police officers in an unmarked car, in what was a series of suspicious actions. The officers witnessed a Lincoln Continental pull off the road just underneath a railroad bridge, observed two men get out, and the driver leave. The officers followed the car, which eventually pulled into a driveway, went back to the railroad bridge, slowed almost to a stop, and then continued; at this time, the officers observed two men standing beside an air compressor located under the bridge. The car made a U-turn about 1,000 feet past the bridge and returned to the bridge again. After making a second U-turn, the car paused briefly to pick up the two men; the car then proceeded into Detroit and returned to the area of the bridge, with a period of seven to ten minutes elapsing for the entire trip. The officers pulled into a position from which they could observe the Lincoln, which finally came to a stop at the bridge previously mentioned. The officers saw three men get out of the car; one of them opened the trunk; they then went to the air compressor, and as they returned to the car they seemed to be carrying some articles in their arms. After these articles were put into the trunk, the Lincoln was driven away, followed by the officers. After proceeding a short distance, the officers stopped the Lincoln and ordered the occupants out of the car. The officers viewed burglary tools in the back seat of the car; the driver could not produce any proof of ownership of the car or a drivers' license; when asked if they worked for the railroad, their explanation contained certain facts which were

directly contrary to what the officers had observed. Furthermore, the driver of the car said that he did not have a key to the trunk. The defendants were placed under arrest, and the officers then attempted to pry open the trunk but were unsuccessful. The defendants were taken to police headquarters by two other officers who had been sent to assist. One officer drove the Lincoln to the police station while the other examined the air compressor. The lock on one of the compartments had been forced. When the officer returned to the police garage, his partner had just pried open the trunk; three jackhammers were in it. The officer had not obtained a search warrant prior to the search. In the instant case, the officers had probable cause to arrest the defendants, but defendants assert that the search of the automobile at the police station was unreasonable in that the officers did not obtain a warrant to do so.

On the basis of *Chambers* v. *Maroney* (1970), 399 US 42 (90 S Ct 1975, 26 L Ed 2d 419), and *People* v. *Miller* (1970), 26 Mich App 665, the evidence seized here was properly admitted. In *Chambers, supra,* p 52, the Court said:

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. The same consequences may not follow where there is unforeseeable cause to search a house. Compare *Vale* v. *Louisiana* [1970], 399 US 30 [90 S Ct 1969, 26 L Ed

2d 409]. But as *Carroll, supra* [(1925) 267 US 132 (45 S Ct 280, 69 L Ed 543)], held, for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars."

There was no doubt in the officer's mind that a search of the trunk of the automobile would have uncovered fruits of the crime, in that the officers actually saw the goods being placed in the trunk. Furthermore, the search was reasonable and contemporaneous in light of the continuation of the search lawfully begun at the time and location of the arrest. The officers never abandoned their search; they were temporarily thwarted by their inability to open the trunk. The arrest and search under such circumstances were units of an integrated incident.

Defendants' next contention concerns the charge under Count 1 concerning larceny from a trailer. The trailer was a portable air compressor trailer, from which defendants had broken or pried open a compartment, and removed three jackhammers. Defendants contend on appeal, as they did below, that, as a matter of law, the compressor was not a trailer. Defendants point to the definition of "trailer", as given in the motor vehicle code, MCLA § 257.73 (Stat Ann 1968 Rev § 9.1873), as

"every vehicle with or without motive power, other than a pole-trailer, designed for carrying property or persons and for being drawn by a motor vehicle and so constructed that no part of its weight rests upon the towing vehicle."

Defendants maintain the key words in the above statute are "designed for carrying property or persons" and that the air compressor trailer was not so designed. Defendants are incorrect in their contention that the definitions found under the motor vehicle code are directly applicable to the penal code.

The judge's submission to the jury on this issue was proper.

In the instant case, the people called upon a railroad supervisor to give expert testimony regarding the value of the jackhammers in question. Defense counsel objected to this testimony, contending that the witness was not competent to testify as an expert, and since no other evidence was presented concerning this element, the count of larceny over $100 was improperly submitted to the jury. The Michigan law is clear regarding the qualifications of an expert. In *People* v. *Hawthorne* (1940), 293 Mich 15, 23, the Supreme Court stated:

"The determination of the qualifications of an expert is a question for the trial judge and we entrust the matter to his discretion. We interfere only to correct an abuse." See other cases cited there.

The witness in question, a railroad supervisor, had witnessed and been a part of the buying and selling of other used railroad equipment. He had familiarized himself with the equipment in question. We find that the trial judge did not abuse his discretion in qualifying this witness.

Affirmed.