No. 86-24

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

THE STATE OF MONTANA,

   Plaintiff and Respondent,

 -vs-

THOMAS ARTHUR ROMERO,

   Defendant and Appellant.

APPEAL FROM: The District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Knuchel & McGregor; Daniel B. McGregor argued,
Livingston, Montana

  For Respondent:

    Hon. Mike Greely, Attorney General, Helena, Montana
Barbara Claassen argued, Asst. Atty. General, Helena
Nels Swandal, County Attorney, Livingston, Montana

Submitted: October 21, 1986

Decided: December 30, 1986

Filed: DEC 30 1986

<u>Ethel M. Harrison</u>
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant was convicted of criminal possession with intent to sell dangerous drugs, in a jury trial in Park County. We affirm.

The issues are:

1. Did the District Court err in denying the motion to suppress admission of the marijuana seized from the truck?

2. Was the evidence of other acts properly admitted?

On December 11, 1984, defendant Mr. Romero rented a motel room in Columbus, Montana. While in Columbus, he drank at several bars and was involved in a couple of altercations, resulting in his coming into contact with the police.

In the early morning hours of December 12, 1984, Highway Patrolman Jay Dixon was notified that a vehicle was in the median of the interstate near Livingston, Montana. The vehicle was Mr. Romero's truck. The roads were icy, as it had snowed earlier. Patrolman Dixon reached the truck at approximately 5:30 a.m. and called in the Colorado license plate number to the Livingston Police Department. Mr. Romero called out from the truck that he wanted a wrecker, not the officer's services. At approximately the same time, Patrolman Dixon received a radio report from the Big Timber sheriff's office that the driver of the truck had been in an altercation in Columbus the night before and might be intoxicated and/or armed. Patrolman Dixon informed Mr. Romero he would call a wrecker. He went into Livingston, called Gray's Road Rescue, and also picked up a Livingston police officer before returning to the scene of the accident.

When the officers returned to the truck, Mr. Romero was asleep or passed out on the seat. Patrolman Dixon rapped on

2

the window and opened the door to waken Mr. Romero, who immediately became combative. The officers detected an odor of alcoholic beverage and arrested Mr. Romero for driving under the influence of drugs or alcohol (DUI). They hand-cuffed him, placed him under arrest, and put him in the patrol car. As Patrolman Dixon secured the truck, he noticed 3 or 4 beer bottles on the floor of the cab. He did not seize the bottles as evidence of DUI at that time.

When Mr. Romero was booked into the Park County jail, he had $1,500 in 50-dollar bills in his possession. After the booking, shortly before 7:00 a.m., Patrolman Dixon and the other officer went to Gray's Road Rescue to get the beer bottles from the truck. It was being held inside a building. As Patrolman Dixon retrieved the beer bottles, he noticed a small amount of green, leafy substance on the floor. He seized that also. The substance field tested positive for marijuana.

Based upon the marijuana found on the floor of the pickup, Mr. Romero's substantial pocket cash, and reports from Columbus that Mr. Romero was suspected of attempting to sell marijuana, Patrolman Dixon obtained a search warrant for the truck. He found three large bundles of marijuana in a tool box located under the locked hood of the pickup. Mr. Romero was then charged with intent to sell more than a kilogram of marijuana and criminal possession of dangerous drugs, both felonies. Mr. Romero remained incarcerated and the pickup remained impounded.

One month later, the owner of Gray's called Patrolman Dixon to inform him that the pickup, which was then sitting out on the impound lot, had been tampered with. When Patrol-man Dixon arrived, he saw that a piece of metal was hanging

3

from the right rear wheel well. He looked in the wheel well and saw a wrapped bundle, similar to those seized earlier. A piece of metal had also been removed from the left wheel well and was lying on the ground. Patrolman Dixon phoned another officer for assistance. They searched the truck, finding 20 bundles of what proved to be marijuana in the wheel wells and behind the seat. This search was conducted without a warrant.

Mr. Romero was later released on bail while awaiting trial. During July and August of 1985, he met in Billings with an undercover drug enforcement officer several times to effect drug sales. These meetings resulted in three separate marijuana sales by Mr. Romero to the undercover officer.

Prior to trial, defense counsel filed a motion to suppress concerning all marijuana seized from the truck. He argued that a search warrant should have been obtained before the initial search because the truck was impounded and no exigent circumstances existed. Additionally, defense counsel argued the fruit of the poisonous tree doctrine barred introduction of the marijuana seized later. The motion was denied. The trial judge found the initial seizure of beer bottles and the trace amount of marijuana was justified under the plain view doctrine, the second seizure of three bundles was valid pursuant to a search warrant, and the final seizure of 20 bundles was valid under the plain view doctrine.

The State filed notice of intent to introduce evidence of other acts at trial, including testimony concerning Mr. Romero's activities in Columbus, the recovery of one pound of marijuana from his Columbus motel room, and the July and August transactions with the undercover officer. Following

4

briefing and argument on these matters the trial judge allowed the evidence to be presented at trial.

The other acts testimony was presented the first day of Mr. Romero's trial. Both counsel and the trial judge forgot to present a cautionary instruction to the jury prior to the testimony. The second morning of trial, defense counsel argued in chambers that failure to deliver the cautionary instruction had caused irreparable damage to his client and a mistrial should be granted. The trial judge denied the motion for mistrial, determining that no marijuana had yet actually been introduced into evidence and the jury had been instructed previously not to conclude that testimony about bags or bundles of green, leafy substance proved that it was marijuana. The trial judge further determined that if any prejudice had occurred, a curative instruction the second morning of trial would correct it. Such an instruction was given prior to any testimony on the second day of trial.

The jury found Mr. Romero guilty of criminal possession with intent to sell dangerous drugs. He was sentenced to 16 years in the Montana State Prison.

I

Did the District Court err in denying the motion to suppress admission of the marijuana seized from the truck?

Mr. Romero argues that there were three separate violations of his right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Mont. Const. Art. II, § 11. The first violation occurred, he says, when the beer bottles were retrieved from the truck and the small amount of marijuana was found on the floor. Mr. Romero states that this search of his truck does not fit any of the four recognized

exceptions to the general prohibition against automobile searches without warrants: the automobile exception, the exception for searches incident to arrest, inventory searches, and the plain view exception. Mr. Romero contends that a warrant should have been obtained before the officers retrieved the beer bottles.

The parties' briefs contain lengthy arguments under several theories on whether the warrantless seizure of the beer bottles was constitutional. Because we conclude that this was a reasonably delayed plain view seizure, we will not discuss the other theories raised.

The police may seize evidence without a warrant when they have a prior justification for the intrusion, inadvertently come across incriminating evidence, and exigent circumstances render an immediate seizure imperative. State v. Godsey (1982), 202 Mont. 100, 103, 656 P.2d 811, 813. This is the plain view exception to the warrant requirement for searches and seizures. It is conceded that Patrolman Dixon could have seized the beer bottles as evidence of DUI under the plain view exception when he first saw them in the truck.

Mr. Romero's position is that by waiting until the truck was impounded, Patrolman Dixon lost his opportunity to seize the bottles as evidence without a warrant. However, several jurisdictions have held that a delayed seizure of articles perceived in an arrested person's vehicle at the time of arrest is proper as long as the delay is reasonable. State v. Jines (Mo. 1976), 539 S.W.2d 801; People v. Calhoun (Mich. 1971), 186 N.W.2d 56; State v. Caldrone (Kan. 1970), 473 P.2d 66, cert denied, 401 U.S. 916; State v. Stewig (Minn. 1968), 161 N.W.2d 673; State v. Perez (N.M. 1968), 444 P.2d 602;

6

Price v. United States (D.C.Cir. 1965), 348 F.2d 68, cert denied, 382 U.S. 888.

We agree that a seizure which is proper under the plain view exception may be delayed, so long as the delay is reasonable. After all, the focus of the Fourth Amendment is reasonableness. In this case, Patrolman Dixon determined not to seize the beer bottles from the truck stuck in the median of the interstate at 5:30 a.m. on an icy winter morning while the combative Mr. Romero waited in the patrol car. Instead, he went back to retrieve the bottles as soon as Mr. Romero was booked and incarcerated and the truck had been towed to an impound lot. We conclude that this delay was reasonable.

The defense cites this Court's opinion in State v. Cripps (1978), 177 Mont. 410, 582 P.2d 312, as persuasive. In that case, defendants had arranged to sell drugs to an undercover police officer. When defendants arrived at the meeting place, police and sheriff's officers converged on them. After all the defendants had been arrested and handcuffed, the officers conducted a search of defendants' vehicle. This Court held that the search was not within the permissible scope of a search incident to an arrest or within the automobile exception. The Court distinguished that situation from one involved in a previous case:

> In Turner the defendant was arrested for D.W.I.
> While a police officer was driving defendant's
> vehicle to the police station, he became aware of a
> beer bottle on the floor of the car. When he
> leaned over to pick it up, he noticed a bag of
> marijuana lying near the beer bottle. This Court
> held that . . . the marijuana was admissible . . .
> In Turner the police officer was legitimately
> inside defendant's car to begin with. His discovery
> of the beer bottle and subsequent discovery of
> the marijuana was not because of an intent on his
> part to search the vehicle. Under the circumstances, what the officer did in Turner was reasonable;
> here it was not.

7

Cripps, 582 P.2d at 318-19, distinguishing from State v. Turner (1974), 164 Mont. 371, 523 P.2d 1386. Distinguished from Cripps in the same way Turner can -- the officer was legitimately inside the vehicle. Here, the officer was legitimately in the vehicle to seize the beer bottles which had been discovered earlier. This was not a search incident to an arrest, but a reasonably delayed plain view seizure of the beer bottles which led to a plain view seizure of the marijuana on the floor. Therefore, the trial court properly admitted into evidence the marijuana found on the truck floor.

The defense also asserts that there were no exigent circumstances to justify the officers' entry into the impounded truck and seizure of the beer bottles. It argues that because of the 1 to 1½ hour delay, the plain view doctrine no longer applies and a warrant should have been obtained. On its face, this argument appears to have merit. It is premised upon the idea that the police had possession of the truck from the time of Mr. Romero's arrest, and could have obtained a warrant. However, if a warrant should be required after the delay here, why should a warrant not be required upon any seizure which accompanies an arrest? Considering the nature of the plain view exception, we conclude that the exigent circumstances which would have allowed seizure of the bottles immediately after the arrest did not disappear during the short time between Mr. Romero's arrest and the retrieval of the beer bottles.

The operator of Gray's testified that the seizure of the beer bottles took somewhere between two and five minutes. The defense implies that this time estimate is somehow damaging to the State's case. We do not agree. The two-to-five

8

minute estimate does not establish anything more than that there was a careful seizure of the beer bottles and the consequently-discovered marijuana.

As a result of our conclusion on the admissibility of the small amount of marijuana from the truck floor, it follows that the 3 bundles of marijuana seized on December 12 and the 20 bundles seized in January were admissible into evidence. The warrant issued for the December 12 search was supported by the small amount of marijuana found on the floor of the truck, the reports from Columbus, and the $1,500 in 50-dollar bills in Mr. Romero's possession at the time of arrest. We affirm the conclusion that this is adequate probable cause. The marijuana seized in January is not 'fruit of the poisonous tree' because of our conclusions that the first two seizures were valid. It was discovered when the officers were justifiably investigating the report that the impounded truck had been tampered with. It is admissible under the plain view exception.

We hold that the District Court properly admitted into evidence the marijuana seized from the truck.

II

Was the evidence of other acts properly admitted?

Mr. Romero asserts that testimony presented about his activities in Columbus on the day before he was arrested and about his sales of marijuana to the undercover agent while he was awaiting trial did not meet the guidelines set out in State v. Jensen (1969), 153 Mont. 233, 455 P.2d 631, on evidence of other crimes. He also contends that since the court failed to pre-instruct the jury to weigh the evidence about his activities in Columbus only for limited purposes,

9

reversible error is present under State v. Just (1979), 184 Mont. 262, 602 P.2d 957.

Evidence of acts which are inextricably or inseparably linked with the crime charged is admissible without regard to the rules governing "other crimes" evidence. State v. Riley (Mont. 1982), 649 P.2d 1273, 1279, 39 St.Rep. 1491, 1499. The testimony given on the first day of trial established that Mr. Romero had a bundle of what appeared to be marijuana in his possession while in a Columbus bar. It also establishes that he requested a driver for an unexplained trip to Canada, that one pound of marijuana was found in Mr. Romero's motel room the morning after he checked out, and that he denied having a vehicle when questioned by the Columbus police. We conclude that these prior acts, which occurred a few hours before his arrest, are inextricably linked to the charged crime of possession of marijuana with intent to sell. Therefore, the Just and Jenson requirements do not apply to the testimony about Mr. Romero's activities in Columbus.

Since the testimony of the undercover agent was presented the second day of trial, after the Just admonition was given to the jury, the Just requirement was met. The Jenson guidelines for "other crime" evidence are that there be 1) similarity between the crimes or acts; 2) nearness in time; 3) a tendency to establish a common scheme, plan, or system; and 4) a determination that the probative value of the evidence is not substantially outweighed by the prejudice to the defendant. Jensen, 602 P.2d at 961. Mr. Romero argues that the first and fourth requirements were not met. We disagree. At trial, Mr. Romero's counsel arged that there was no proof that Mr. Romero was aware of or responsible for the marijuana hidden in secret compartments of the truck. The undercover

10

agent's testimony went directly to Mr. Romero's personal involvement with the similar crime of sales of large quantities of marijuana. We conclude that the District Court correctly determined that the probative value of this evidence is not substantially outweighed by the prejudice to Mr. Romero, and that the District Court properly allowed the testimony into evidence.

We affirm the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11

Mr. Justice John C. Sheehy, dissenting:

The majority have rescued the conviction of the defendant from a terribly bungled police investigation, but at what cost to the law of searches and seizures.

All of the evidence retrieved from the truck should have been suppressed in this case.

The first search of the truck occurred when the vehicle was safely impounded in a wrecking yard at the orders of the police. Thus the usual exceptions to a warrantless seizure do not apply. There were no exigent circumstances. There was no inventory search incident to arrest. No reason appears why the officers did not apply first for a search warrant before entering the impounded truck.

The "plain view" doctrine does not save the intrusion into the truck without a warrant. If at the time of the arrest the officers had taken into their possession the articles then in plain view, their actions would have been permissible. That did not occur here. Instead the articles were seized as a result of a warrantless search of the truck at a time when the "plain view" rule did not apply.

The fact that the officers saw the articles in the truck would have been useable in an affidavit for a search warrant later. The rule is that articles, though in plain view, seized as part of a warrantless entry, must be suppressed on motion. See People v. Griffin (Colo. 1986), 727 P.2d 55; Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

The illegal seizure of a marijuana leaf as part of a warrantless entry into the truck was used later by the police as part of their justification of probable cause to get the

search warrant for the second seizure of contraband. The taint of the first illegal seizure comes over and poisons the second seizure.

The third seizure, that from the hidden panels and wheelwells, again occurred without a warrant, and no excusable attendant circumstances. Again the search was illegal, and the products of the illegal search should be suppressed.

Therefore I dissent.

_____John C. Sheehy_____
Justice

I agree with the dissent of Mr. Justice John C. Sheehy:

_____William E. Hunt_____
Justice

- 13 -