Richard **EMERY**, Plaintiff, Appellee,

v.

Peter Bradford **HOLMES**, et al.,
Defendants, Appellants.

No. 86–1486.

United States Court of Appeals,
First Circuit.

Heard Oct. 9, 1986.
Decided July 29, 1987.

Timothy M. Burke, Boston, Mass., for defendants, appellants.

Harold Resnic, Springfield, Mass., with whom Susan B. Persky, Brookline, Mass., was on brief, for plaintiff, appellee.

Before BOWNES, Circuit Judge, BROWN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge.

Richard Emery filed this action under 42 U.S.C. § 1983 against several police officers for damages resulting from their seizure of his Peugeot automobile during a search of his neighbor's property. The police officers who executed an arrest warrant for Emery's neighbor and obtained a search warrant for the neighbor's property recognized Emery's car as the same car identified in a search warrant for its previous owner's property. The earlier search warrant had expired by its own terms five months earlier. The officers seized the car under the incorrect belief that its seizure was supported by the search warrant for the neighbor's property which specifically authorized the search of "all vehicles" on the property and additionally by the plain view doctrine.

The officers' motion for summary judgment asserting (i) the officers were entitled to qualified immunity, and (ii) the seizure of the automobile did not violate Emery's Fourth Amendment rights was denied. The District Court held that the officers failed to demonstrate that, as a matter of law, the seizure of Emery's automobile was authorized by either a warrant or the plain view doctrine and thus were not entitled to summary judgment on qualified immunity. We affirm the District Court's denial of the officers' summary judgment motion finding

* Of the Fifth Circuit, sitting by designation.

that when construed in a light most favorable to Emery, there remains genuine issues of material fact as to whether Emery's Fourth Amendment rights were violated and whether such alleged conduct would be outside the officers' qualified immunity. Emery is entitled to a trial for a fact finder to determine whether the officers acted outside their qualified immunity and violated Emery's Fourth Amendment rights by seizing his automobile.

### Seizing Summary Judgment

■ A denial of a motion for summary judgment is interlocutory in character and is normally not appealable as a final decision. *Agromayor v. Colberg*, 738 F.2d 55, 57 (1st Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984); 28 U.S.C. §§ 1291, 1292. However, in *Krohn v. United States*, 742 F.2d 24, 28 (1st Cir. 1984), this Court furrowed an exception to the final judgment rule to allow appeals from interlocutory denials of summary judgment on the issue of qualified immunity, because the entitlement not to stand trial conferred on government officials through qualified immunity is "effectively lost if the case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411, 425 (1985); *Bonitz v. Fair*, 804 F.2d 164, 174 (1st Cir.1986); *De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1189 (1st Cir.1986); *see also, Stevens v. Corbell*, 798 F.2d 120, 121 (5th Cir.1986); *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986). At the same time, we held that "qualified immunity differs from absolute immunity in that it is not so readily decided by motion; obviously on some occasions officials possessing only qualified immunity must stand trial." *Krohn*, 742 F.2d at 28. Both parties agree that the District Court's denial of summary judgment on the issue of qualified immunity is properly before this Court under *Krohn*.

■ Granting that summary judgment denying qualified immunity is appealable, Emery challenges our jurisdiction to review the District Court's denial of the officers' motion for summary judgment on whether the Fourth Amendment was violated as a nonappealable interlocutory decision. "The fact that we have jurisdiction over a district court order on an interlocutory basis does not permit us to review other claims raised below." *Bonitz v. Fair*, 804 F.2d 164, 173 (1st Cir.1986). The legality of the officers' seizure of the automobile is a necessary component of qualified immunity and is reviewed here only to the extent necessary as an element of that ruling on summary judgment.[1]

### The Peugeot's Past

On March 20, 1981, the officers went to the home of David Nissenbaum to execute a warrant for his arrest. When the officers arrived, they recognized the red 1979 Peugeot sedan parked in front of Nissenbaum's house as subject to a search warrant issued October 20, 1980, for Theodore A. Adler.[2] Officer Branscombe, who obtained the October 20, 1980 warrant for Adler's residence, located in Bolton, Massachusetts, approximately forty miles from Emery's and Nissenbaum's, was also involved in the seizure of Emery's Peugeot from Nissenbaum's. That warrant specifically identified the red Peugeot as among the property to be searched and seized. When Branscombe attempted to execute that warrant, the Peugeot was not found. The October 1980 warrant expired on its own terms seven days later.

Three weeks after the October search warrant was issued, Adler sold the car to

1. In reviewing the District Court's holding on Emery's Fourth Amendment claim, we make no holding as to whether Emery's rights were violated, but rather whether under Fed.R.Civ.P. 56(c), construing all facts in favor of Emery, there is a genuine issue of material fact of whether his Fourth Amendment rights were violated for the purposes of ruling on the officers' motion for summary judgment claiming qualified immunity.

2. Theodore Adler is an alias for William Reid, a fugitive from Florida law who was suspected of using his Massachusetts residence as a safe house for the storage and distribution of marijuana.

Emery.[3] Emery did not change the title, registration, or license plates to reflect the transfer of ownership. Thus, all state records available to the police officers would reflect Adler as the true owner of the vehicle.

### The Neighbor's Arrest

Following an extended drug trafficking investigation, the officers obtained an arrest warrant for David Nissenbaum and his wife.[4] When the officers went to execute the arrest warrant for David Nissenbaum, they recognized the Peugeot parked in front of Nissenbaum's house as the same Peugeot identified as an item subject to search in the October 1980 search warrant for Adler's residence. They also observed marijuana plants growing in Nissenbaum's greenhouse through a window. Based on this observation, Officers Holmes and O'Brien left the scene to obtain a search warrant for Nissenbaum's residence. The search warrant they obtained specifically authorized a *search* of Nissenbaum's house and "all ... vehicles on the property." It did not specifically describe any particular vehicle to be searched. The warrant specifically authorized the *seizure* of marijuana, money or proceeds derived from the distribution, transportation and sale of marijuana, any records pertaining to the transportation and distribution of marijuana, any technical devices, and any devices used in the manufacture, cultivation, and manicuring of marijuana. The warrant did not authorize the seizure of any vehicle in either general or specific terms.

### The Sedan's Seizure

When Holmes and O'Brien returned to Nissenbaum's house with the search warrant, the Peugeot was now parked next door in front of Emery's house.[5] There is no dispute that the Peugeot was seized after Holmes and O'Brien returned with the Nissenbaum search warrant or that Holmes discovered marijuana and $5,000 in cash when he searched the Peugeot six days later.[6] However, the manner in which the car was seized and which officers participated in its seizure is disputed. Because this case is presently before us on a motion for summary judgment, we must constrict our analysis to view the facts in a light most favorable to the nonmoving party, Emery. Fed.R.Civ.P. 56(c); *Voutour v. Vitale*, 761 F.2d 812, 817 (1st Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Emery v. Merrimack Valley Wood Products*, 701 F.2d 985, 986 (1st Cir.1983); *Santoni v. Federal Deposit Insurance Corp.*, 677 F.2d 174, 177 (1st Cir.1982).

Emery asserts that Officers Holmes and O'Brien came to his house, refused to show him a search warrant, and told him that they were taking the Peugeot. Emery protested that the car no longer belonged to Adler and tried to show the officers his bill of sale and applications for title and registration. Emery claims the officers refused to examine the papers showing Adler no

---

**3.** Emery agreed to pay Adler $2,000 upon delivery of the car and another $2,000 sometime in the future; however, Adler disappeared and Emery has been unable to pay the remaining $2,000 of the purchase price. The two did not complete all of the procedures necessary for the registration of the vehicle's sale. They memorialized the transaction in a bill of sale and Emery took possession of the certificate of registration on which the transfer of ownership was indicated.

**4.** Emery lives approximately 150 feet from Nissenbaum on a 54 acre lot which they own as tenants in common along with two others in Monson, Massachusetts.

**5.** There is some dispute concerning the Peugeot's location at various times throughout the

arrest, search, and seizure. Apparently, when viewed in a light most favorable to Emery, the car was originally parked in front of Nissenbaum's house when the officers arrived to arrest Nissenbaum, but was then driven away by Emery's wife. When the officers returned with the search warrant, the car was parked at Emery's house. At the insistence of the officers it was returned to the Nissenbaums and seized from there.

**6.** The District Court concluded that Emery had adequate possessory interest in the Peugeot to have standing under § 1983 to claim a violation of his fourth amendment rights, but lacked sufficient possessory interest to have standing to challenge the seizure of the $5,000 found in the car. These rulings are not challenged on appeal.

longer owned the automobile and threatened to arrest him if he did not turn over the car. Emery removed his personal belongings from the car and had a friend drive it over to the Nissenbaums' house where the police eventually impounded it.[7]

### Qualifying for Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982).

■ The Supreme Court eliminated considerations of the officials' subjective state of mind in *Harlow*. The current standard for when an official is acting within the limits of qualified immunity focuses on the objective reasonableness of the officials' conduct. "Under this standard, the reasonableness of the official's conduct is not measured against the official's *actual* knowledge of constitutional standards and the probable constitutionality of his or her action, but rather against a relatively uniform level of 'presumptive knowledge' of constitutional standards." *Floyd v. Farrell*, 765 F.2d 1, 4–5 (1st Cir.1985) (footnote omitted); *see also Harlow*, 457 U.S. at 815, 102 S.Ct. at 2736–37, 73 L.Ed.2d at 408–09.

Our analysis, like the District Court's, is two-fold. Whether there is a genuine issue of material fact that (i) Emery's constitutional rights were violated; and if so, (ii) whether those rights were clearly established so a police officer could reasonably have thought his/her conduct was consistent with those rights. *See Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

### Violating Clearly Established Rights

■ The officers make two arguments in support of their position that they were entitled to summary judgment because their conduct did not violate Emery's constitutional rights under the Fourth Amendment. First, the officers argue that the Peugeot was seized pursuant to a valid search warrant;[8] and second, they rely on the plain view doctrine to justify the seizure as an exception to the warrant requirement. We cannot conclude that the District Court erred in denying summary judgment because a genuine issue of material fact exists on whether the Peugeot's seizure was authorized by either warrant and whether the plain view doctrine can be used in this instance to alleviate the officers of the warrant requirement's burdens.

■ The October 1980 warrant specifically described the Peugeot but had expired by its own terms after seven days. Furthermore, it only authorized a search of the Peugeot at Adler's residence located 40 miles from the site of its seizure. The March 20, 1981 search warrant similarly failed to support a seizure of the Peugeot. A warrant must specifically describe all items to be seized so that nothing is left to the discretion of the officer when executing the warrant. *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 325, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920, 927–28 (1979); *Coolidge v. New Hampshire*, 403 U.S. 443, 471, 91 S.Ct. 2022, 2040–41, 29 L.Ed.2d 564, 586 (1971); *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231, 237 (1927).

We need not reach the determination of whether the warrants' purported authorization of a search of all vehicles on the Nissenbaum property would have supported a search of any vehicle located thereon because of the seizure of Emery's automobile. The warrant did not authorize the seizure of any vehicle in either general or

---

7. Officer Holmes recalls going to Emery's home and asking Emery to look after Nissenbaum's children. He recalls no conversation regarding the Peugeot. Officer O'Brien recalls asking Emery about who owned which house on the property and Emery refusing his request to search Emery's house.

8. The officers do not specify which search warrant validated the seizure, the October 20, 1980 warrant for Adler's residence or the March 20, 1981 warrant for Nissenbaum's residence.

specific terms; at most, it only authorized their search.

In *Coolidge v. New Hampshire,* the Supreme Court held that "[i]f the initial intrusion is bottomed upon a warrant that fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirement of '[w]arrants ... particularly describing ... [the] things to be seized.'" *Coolidge,* 403 U.S. at 471, 91 S.Ct. at 2041, 29 L.Ed.2d at 586. The District Court was proper in its conclusion that a genuine issue of material fact remained concerning the illegality of the officers' seizure of Emery's Peugeot.

### A Peugeot In Plain View

The officers also argue that Emery's rights were not violated because the seizure of the Peugeot was legal under the plain view doctrine established by the plurality opinion in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). "It is well established that under certain circumstances the police may *seize* evidence in plain view without a warrant." *Id.,* 403 U.S. at 465, 91 S.Ct. at 2037, 29 L.Ed.2d at 582, *quoted in Arizona v. Hicks,* — U.S. —, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347, 354 (1987) (emphasis added by *Hicks* ). Those circumstances have been widely acknowledged to have three requirements: (i) the officers must lawfully be at the place from which they observe the evidence; (ii) the discovery of the evidence is inadvertent; and (iii) the incriminating character of the evidence must be immediately apparent.[9] *Coolidge,* 403 U.S. at 465–70, 91 S.Ct. at 2037–40, 29 L.Ed.2d at 582–85.

No one contests the District Court's conclusion that the officers were in a place where they legally had a right to be when they first observed Emery's Peugeot. However, as the District Court identified, the question concerning the applicability of the plain view doctrine to the seizure of Emery's Peugeot focuses on the second and third element of that doctrine.

■ The record reflects adequate cause for the District Court's concern regarding whether the observation of Emery's Peugeot was inadvertent. While the initial observation appears to be inadvertent, Emery argues that the delay between the initial observation and the eventual seizure of his car prevented the second observation from being inadvertent by suggesting that the officers lay in wait for the car to return to plain view. A delay between the initial observation and eventual search or seizure under the plain view doctrine is analyzed under a test of reasonableness consistent with other Fourth Amendment analysis. *Price v. United States,* 348 F.2d 68 (D.C. Cir.), *cert. denied,* 382 U.S. 888, 86 S.Ct. 170, 15 L.Ed.2d 125 (1965); *see also State v. Romero,* 730 P.2d 1157 (Mont. 1986); *State v. Jines,* 539 S.W.2d 801 (Mo.App. 1976); *People v. Calhoun,* 186 N.W.2d 56, 30 Mich.App. 160 (1971).

The actions of the officers during this interim period prevents a finding of inadvertence on summary judgment in this case. The officers observed the car at the same time that they observed the marijuana in Nissenbaum's greenhouse. They then went before a magistrate for the purposes of obtaining a search warrant for Nissenbaum's property. The officers knew at the time they applied for the warrant that the Peugeot was on the Nissenbaum property and had recognized the Peugeot as subject to a previous search warrant. At that time they had all the information on which they based their eventual seizure of the car. Their failure to obtain a particularized warrant for its search and seizure while they were before the court with information obtained at the same time to search the house precludes the court from granting summary judgment that the seizure met *Coolidge's* second requirement of inadvertence. The purposes of the plain

---

**9.** Although the circuit courts have uniformly applied this three-part test, the Supreme Court has expressly declined to rule on the inadvertent discovery requirement. "This 'requirement' of the plain view doctrine has never been accepted by a judgment supported by a majority of this Court." *Arizona v. Hicks,* — U.S. at —, 107 S.Ct. at 1155, 94 L.Ed.2d at 357 (White J. concurring).

view exception to the warrant requirement would be eviscerated by the officers obtaining a warrant knowing of the Peugeot and the prior, but expired, warrant for its earlier search. *See Coolidge*, 403 U.S. at 471, 91 S.Ct. at 2040–41, 29 L.Ed.2d at 586. Although that search warrant, on its face, authorized the search of all vehicles on the Nissenbaum property, there was no authorization to seize any vehicle on the property.

The officers' seizure of Emery's car also failed the third rung of the plain view test on summary judgment. The Supreme Court recently held that seizure under the plain view doctrine requires probable cause to believe the object's incriminating evidence is readily apparent. *Arizona v. Hicks*, ——— U.S. ———, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). The Court stated that "[n]o reason is apparent why an object should routinely be seizable on lesser grounds ... then would have been needed to obtain a warrant for that same object if it had been known to be on the premises." *Id.* at ———, 107 S.Ct. at 1154, 94 L.Ed.2d at 355.[10] Here, the object was known to be present at the time the officers applied for a warrant. To permit a seizure without a warrant under these circumstances endangers the warrant requirement's continued validity in light of its ever expanding exceptions. While a seizure may be justified on less than probable cause in some narrow situations, the mere fact that the item lawfully came within the officers' plain view cannot supplant the requirement of probable cause for its seizure. *Id.*

■ The officers suggest that probable cause did exist to seize the car based on a revival of the probable cause which supported the October 1980 warrant of Adler's residence. Where recent information corroborates otherwise stale information, probable cause may be found. *Andresen*

v. *Maryland,* 427 U.S. 463, 478 n. 9, 96 S.Ct. 2737, 2747 n. 9, 49 L.Ed.2d 627, 641 n. 9 (1976) (three month delay between acts on which warrants were based and searches did not invalidate warrants); *United States v. Viegas,* 639 F.2d 42 (1st Cir.) (probable cause was revived when the present observations were taken in conjunction with earlier information), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981); *United States v. DiMuro,* 540 F.2d 503, 516 (1st Cir.1976) (evidence from five months earlier was sufficient basis for a search warrant giving recent corroborating evidence), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977).

■ In all of these cases relied on by the officers, recent information was presented to a magistrate to support continued reliance on stale information, thus removing the "staleness" of the information. The only recent information obtained by these officers was the new location of the automobile. The District Court correctly held that for the purposes of summary judgment, the mere presence of the Peugeot in front of Emery's house in March 1981 was inadequate to revive and transform the probable cause supporting the October 1980 warrant to search the automobile into probable cause to seize the automobile at its new location. A genuine issue of material fact remains as to the existence of probable cause and the inadvertence of the officers' observation at the time they seized the Peugeot and therefore, the District Court properly denied the officers' motion for summary judgment on the legality of the seizure itself.

*Objective Legal Reasonableness*

■ The scope of an officer's qualified immunity is defined by the objective legal

---

**10.** This also raises the issue of whether the officers discovered the Peugeot inadvertently. The officers knew of the Peugeot's presence and past prior to applying for the search warrant for the Nissenbaum's residence. The issues are then presented (i) whether the inadvertence of the officers' initial observation continues through its eventual seizure; and (ii) whether the second observation was itself inadvertent despite the

officers' prior knowledge of the vehicles presence. *See, e.g., State v. Romero,* 730 P.2d 1157 (Mont. 1986) (seizure of beer bottles from a truck several hours after discovery was inadvertent under plain view doctrine when officers had to secure the accident scene prior to collecting evidence). These issues preclude summary judgment at this stage in the proceedings.

reasonableness of the officers' actions. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, —— U.S. at ——, 107 S.Ct. at 3039, 97 L.Ed.2d at 531. The District Court held that "the law was clear in March 1981 that search warrants must particularly describe the property to be seized ... no reasonable police officer in the defendant's position would have believed either that the search warrant obtained by Holmes and O'Brien [on March 20, 1981] particularly described the Peugeot as property to be seized, or that it was immediately apparent that the Peugeot was incriminating evidence." *Emery v. Holmes*, No. 82–0355–F, unpublished slip op. at 21–22 (D.Mass. May 2, 1986).

Based on our analysis above regarding the genuine issues of material fact that the seizure may have violated well established Fourth Amendment principles, we conclude that the District Court correctly denied the officers' motion for summary judgment asserting that the seizure of Emery's Peugeot was within their qualified immunity. These issues remain to be decided by the finder of fact at trial.

AFFIRMED.