UNITED STATES of America

v.

Rayful EDMOND, III, et al.,
Defendants.

Crim. No. 89–0162.

United States District Court,
District of Columbia.

Sept. 5, 1989.

Jay B. Stephens, U.S. Atty., Betty Ann Soiefer, Robert Andary and Barry Tapp, Assistant U.S. Attys., for U.S.

Cynthia W. Lobo, Washington, D.C., for defendant Melvin Butler.

Ernest W. McIntosh, Washington, D.C., for defendant Willie Childress.

Catherine Brown, Washington, D.C., for defendant Keith Cooper.

Arthur M. Levin, Washington, D.C., for defendant Columbus Daniels.

William Garber, Washington, D.C., for defendant Rachelle Edmond.

Vincent Bowers, Washington, D.C., for defendant Ronald Green.

Joseph Virgilio, Washington, D.C., for defendant Robert Hardy.

Elise Haldane, Washington, D.C., for defendant James Antonio Jones.

Leroy Nesbitt, Washington, D.C., for defendant Tony Lewis.

John Drury, Drury and Brennan, Washington, D.C., for defendant Deatria Lindsay.

Michelle A. Roberts, Washington, D.C., for defendant Patrick McDonald.

Thomas Slawson, Washington, D.C., for defendant Bernice Hillman–McGraw.

Robert Werdig, Washington, D.C., for defendant David McGraw.

Joseph Conte, Washington, D.C., for defendant Jerry Millington.

Leonard Long, Washington, D.C., for defendant John Monford.

Robert Sanders, Washington, D.C., for defendant Armaretta Perry.

W. Gary Kohlman, Washington, D.C., for defendant Constance Perry.

Sol Rosen, Washington, D.C., for defendant Melvin Stewart.

Diane Lepley, Washington, D.C., for defendant Emanuel Sutton.

Retna Pullings, Washington, D.C., for defendant Jeffrey Thompson.

Nina Kraut, Washington, D.C., for defendant Rayniece Edmond Thompson.

Idus Daniel, Washington, D.C., for defendant Katrina Wade.

William H. Murphy, Jr., Baltimore, Md., for defendant Rayful Edmond III.

## OPINION AND ORDER

CHARLES R. RICHEY, District Judge.

Those defendants with standing to do so have moved to suppress the fruits of three searches: (1) an April 16, 1989, search of a house located at 407 M Street, N.E.; (2) a February 5, 1988, search of the same house; and (3) a December 24, 1987, search of an apartment occupied by the defendant Edmond. The Court will address the searches in turn.

### 1. *407 M Street—April 16, 1989*

The defendants challenge the warrant authorizing this search, as well as the

"scope and intensity" of the search's execution. As to the former, they contend that the warrant's relatively unspecific description of the objects to be seized converted it into a "general warrant," and that anything taken under its authority must be suppressed. As to the latter, they contend that the searching officers "rummaged at will" through every document in the house, without regard for the proscriptions of the warrant or the plain view doctrine, and that they took large numbers of documents that were nowhere described in the warrant or supporting affidavits. They argue that the blunderbuss nature of the search offends the fourth amendment and requires suppression.

■ The Court disagrees on both points. Concededly, it can be argued that the warrant, signed by the Magistrate on April 14, contains an unacceptably "general" description of the items to be seized, and that this generality is not saved by an express incorporation of the attached affidavit. Nevertheless, there is no indication that this error—to the extent it is error—is in any way attributable to the officers who sought the warrant, or that it was intentionally perpetuated by the officers who executed it. To the contrary, the officers, in obtaining and carrying out the warrant, acted only in strictest compliance with the Fourth Amendment's commands. Under these circumstances—even assuming that the warrant was defective in form—suppression is an inappropriately drastic remedy. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[1] *Cf.*, *United States v. Anderson*, 851 F.2d 384, 388–89 (D.C.Cir.1988) (no suppression where warrant failed to specify any items to be seized).

■ The defendants also claim that the overly broad execution of the warrant—including the seizure of documents not speci-

---

1. The following from *Leon* is particularly apposite: "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.... Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." 468 U.S. at 922, 104 S.Ct. at 3420. Moreover, this situation does not appear to the Court to present an instance in which the warrant was so clearly deficient as to render unbelievable an officer's assertion of good faith reliance. *Id.* at 924, 104 S.Ct. at 3421.

fied in the warrant—requires suppression of *everything* seized from the house. The premise of the defendants' contention, however, is incorrect: the seizure of items beyond the scope of a warrant does not mandate the suppression of other items properly seized. *In re Search Warrant Dated July 4, 1977*, 667 F.2d 117, 130–33 (D.C.Cir. 1981). Consequently, those items seized that fall within the scope of the warrant in this case shall be admissible. Yet, the defendants properly note that, as to those items not defined by the warrant, the government has not made a sufficient showing that they properly were seized under the "plain view doctrine." *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Accordingly, with regard to those items that do not fall within the terms of the warrant, the government may not introduce them at trial absent some additional showing that the "plain view" exception to the warrant requirement is applicable.

### 2. *407 M Street—February 5, 1988*

The defendants challenge the warrant authorizing this search on the same grounds as the warrant discussed above: that it is unacceptably general, and that it is not saved by the incorporation of a more specific affidavit. Again, however, the remedy of suppression is foreclosed under these circumstances by *Leon;* there is no indication—even assuming a defective warrant—that the officers acted with anything other than good faith.

■ The defendants also challenge the seizure of various materials, including a gun, which they contend were not defined in the search warrant. The warrant provided the officers with authority to seize "cocaine or any other contraband, currency, proof of residence, and any other materials relating to the distribution of narcotics." The defendants argue that the government has failed to carry its burden under the plain view doctrine of defending the seizure of items not included within this definition.

Although the defendants' memorandum did not particularly describe which of the seized materials the defendants are most concerned with, the Court has difficulty seeing how any of the materials fall outside the scope of the warrant. The "Return" section of the warrant notes that following were seized: "258½ grms. of cocaine, $27,704.00, marijuana, personal papers, .9 mm and ammo." It appears to the Court that each of these items corresponds to a category of seizable material specified in the warrant. The defendants devote most of their energy to arguing that seizure of the gun was impermissible under the plain view doctrine. Yet, the gun can obviously be classified as "material[ ] relating to the distribution of narcotics," and the seizing officer testified that he regarded it as such. The other materials also clearly fall within the scope of the warrant, and there is no basis for suppressing them. Under these circumstances, the plain view doctrine does not come into play. Properly seen, the defendants' challenge reduces to an attack upon the generality of the warrant, rather than upon its execution. Yet, while the warrant might have been more tightly drafted, any failure in this regard cannot be attributed to the executing officers so as to justify suppression.[2]

### 3. *Apartment 830, Buchanan House—December 24, 1987*

On December 24, 1987, officers of the Drug Enforcement Administration searched apartment 830 at the Buchanan House, in Arlington, Virginia. They acted under a warrant authorizing the seizure of "cocaine, drug cutting paraphernalia, packaging equipment, cash proceeds of drug sales, address books and telephone books containing names and addresses of coconspirators, fingerprints, firearms, photographs of coconspirators, firearms, 'owe sheets', bankbooks and checkbooks (reflecting [illegible] from cocaine distribution),

---

**2.** The Court has also considered the defendants' arguments regarding the "scope and intensity" of the search. Mem. at 18–20. The Court finds that none provides a basis upon which the evidence might be suppressed.

airline tickets, keys to vehicles used by a [illegible]." In fact, the searching officers seized only a photograph taken of the defendant Edmond with Alta Rae Zanville. The defendants nevertheless contend that the government intends to introduce testimony from the officers as to what they observed in the apartment. According to the defendants, what the officers observed —clothes, numerous documents, etc.—does not fall within the scope of the warrant, and the "search" of those nonwarrant items (i.e., the officers' observation and testimony at trial) cannot be justified under the plain view doctrine.

A review of the warrant shows that it is of very broad scope; the items specified could have been located anywhere in the apartment, and could very well have been hidden. Thus, the officers' thorough search of the apartment—in closets, under beds, through drawers—was perfectly justified in light of the breadth of the warrant and the nature of the items specified. It is fair to say that, under the warrant, the officers had a right to be everywhere in the apartment. In exercising this right, it appears that the officers observed items that were not specifically described in the warrant, such as clothes. The issue is whether these observations, and the government's intention to introduce these observations at trial, are permissible under the plain view doctrine.

The Court believes that they are. When an officer (with the consent of a magistrate) has probable cause to believe that an apartment is being used by a major narcotics trafficker, the officer is also entitled to conclude—once he is in the apartment and actually observes them—that the fine clothes and jewelry he sees are fruits of illegal activity. He may not know this to an absolute certainty, but in the Court's view he will have probable cause to believe they are. Armed with such probable cause, the plain view doctrine permits an officer to observe those clothes and to testify about them at trial. He or she may also "follow up" by investigating where those clothes were purchased. According-

ly, when the officers in this case noticed such clothes and jewelry in apartment 830, they were not required to shield their eyes; common sense produces probable cause, and officers may properly observe and testify later.

Even so, the defendants argue that the observations in this case were not "inadvertent," and thus not permissible under the plain view doctrine.[3] They point to the testimony of Officer Lee that, based upon his experience, he "would expect" to find expensive clothing and jewelry in an apartment of a suspected drug trafficker such as Edmond. Tr. at 998. They contend that an officer may not rely upon the plain view doctrine when he or she has reason to believe that an item is present before the search.

As a matter of law, the defendants' assertion is undoubtedly true: when an officer knows beforehand that an item is present at a location, he or she may not rely upon the plain view doctrine as a means of avoiding the warrant requirement. *See Coolidge v. New Hampshire*, 403 U.S. 443, 470, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971) ("But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different."); *Emory v. Holmes*, 824 F.2d 143, 148–49 (1st Cir.1987) (where officers specifically knew of car's presence on property, but failed to obtain warrant precisely identifying car as property to be seized, officers could not rely upon plain view doctrine).

The case before the Court, however, does not present such a situation. Officer Lee's experience may have led him to expect expensive clothes or jewelry at apartment 830, but there is nothing to suggest that he *knew* beforehand, as did the officers in *Emory* (cited by defendants), that the clothes and jewelry were present. The difference is between evidence that may be present, and evidence that is known present. The difference reflects an inten-

---

3. Although the "inadvertence" component of the plain view doctrine has never been accepted by a majority of the Supreme Court, *see Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 1155, 94 L.Ed.2d 347 (1987) (White, J., concurring), nearly all circuits repeatedly have regarded it as a prerequisite to the government's invocation of the doctrine.

tional subversion of the warrant requirement through manipulation of the plain view doctrine, on the one hand, and a logical expectation based upon experience, on the other. While the latter contains those elements of official bad faith that will justify suppression, the former does not. Certainly, the searching officers were not surprised when they encountered expensive clothes in Edmond's apartment, but neither is there any reason to believe that they knew "in advance the location of the" clothes or jewelry, or that they "intend[ed] to seize" or search them before they entered the apartment. *Coolidge*, 443 U.S. at 471, 91 S.Ct. at 2041. The discovery here did not strike the officers dumb with shock, but it was sufficiently "inadvertent" to permit application of the plain view doctrine.

For the foregoing reasons, the defendants' motion to suppress evidence taken from apartment 830 at the Buchanan House shall be denied.[4]

Accordingly, it is, by the Court, this 5th day of September, 1989,

ORDERED, that the defendants' motion to suppress shall be denied as stated herein.

---

**4.** The defendants' contention that the search violated Fed.R.Crim.P. 41(d) is without merit. The testimony (including testimony quoted in defendants' memorandum) clearly shows, contrary to defendants' assertion, that a copy of the search warrant was left at the apartment following the search. Tr. at 897. Concededly, Officer Lee failed to note that the officers had taken a photograph, but the Court is unwilling to conclude that such an omission requires suppression.