Richard **FELICIANO–ANGULO,**
**Plaintiff, Appellee,**

v.

Hon. Hector **RIVERA–CRUZ, etc.,**
**Defendant, Appellant.**

**No. 87–1846.**

United States Court of Appeals,
First Circuit.

Heard March 7, 1988.
Decided Sept. 30, 1988.

---

**16.** *Misco,* 108 S.Ct. at 371.

**17.** *S.D. Warren Company v. United Paperworkers International Union,* 846 F.2d 827 (1st Cir. 1988).

Carlos Del Valle, Hato Rey, P.R., with whom Rafael Ortiz Carrion, Sol. Gen., Marcos A. Ramirez Irizarry, Jose A. Sanchez Alvarez and Ramirez & Ramirez, Hato Rey, P.R., were on brief for defendant, appellant.

Jesus Hernandez Sanchez, San Juan, P.R., with whom Antonio Hernandez Sanchez, Rio Piedras, P.R., was on brief for plaintiff, appellee.

Before CAMPBELL, Chief Judge, WISDOM,* Senior Circuit Judge, and BOWNES, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This interlocutory appeal is from an action commenced in January 1985 by the plaintiff, Richard Feliciano Angulo, in the United States District Court for the District of Puerto Rico pursuant to 42 U.S.C. § 1983 (1982), against defendants, Hector Rivera Cruz, the Secretary of Justice for the Commonwealth of Puerto Rico, and Luis A. Feliciano, the Commonwealth's interim Secretary of Justice. In his original complaint for damages and equitable relief, Feliciano had alleged that defendants had violated the First and Fourteenth Amend-

* Of the Fifth Circuit, sitting by designation.

ments when, because of his political affiliation, they demoted him from his "trust" position as Puerto Rico's Assistant Secretary for Administration of the Department of Justice, to a career position as Executive Functionary V. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). *See generally Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986) (en banc), *cert. denied,* — U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). After the filing of the original complaint, defendant Rivera Cruz dismissed Feliciano from the career position of Executive Functionary V. This caused Feliciano to amend his complaint to allege that his later dismissal from the career position also violated his constitutional rights in three respects: First, his dismissal was accomplished without procedural due process. Second, his dismissal had violated the First Amendment because it was due to his political affiliation. And third, his dismissal further violated the First Amendment because it was in retaliation for his bringing of the original complaint.

Defendants moved for summary judgment, contending inter alia that political affiliation had been an appropriate consideration when filling Feliciano's former trust position of Assistant Secretary of Administration, and also contending that they were qualifiedly immune from damages on all claims. The district court granted the summary judgment motion in part and denied it in part. It dismissed plaintiff's claim regarding his demotion from the trust position to his career position, ruling that defendants were not only entitled to immunity from damages but that plaintiff was not entitled to an injunction reinstating him to the trust position. But the court denied summary judgment regarding Feliciano's claim that dismissal from his career position violated his rights under the due process clause and the First Amendment. 671 F.Supp. 103.

**42**

Defendant Rivera Cruz now appeals from the district court's order denying him qualified immunity from damages stemming from plaintiff's claims that he was dismissed from his *career* position in violation of his due process and First Amendment rights.[1] *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Defendant argues that the procedures he followed in dismissing plaintiff did not contravene clearly established due process rights. He further argues that he is entitled to qualified immunity from damages related to plaintiff's First Amendment claims. We hold that the district court should have granted defendant Rivera Cruz qualified immunity from damages arising out of plaintiff's due process claim, but agree with the district court that the defendant was not entitled, at the present stage of the proceedings, to a summary judgment allowing him qualified immunity relating to plaintiff's two First Amendment claims.

## I. PROCEDURAL DUE PROCESS CLAIMS

■ The uncontroverted materials attached to defendants' summary judgment motion show that defendant Rivera Cruz notified plaintiff, *before* dismissing him from his career position, of charges pending against him that could warrant his dismissal, explained the evidence behind these charges, and offered plaintiff an opportunity to respond to these charges.[2] In a letter to plaintiff dated May 13, 1985, defendant

stated that plaintiff had misrepresented his previous job experience in his 1978 application for his first position in the Department of Justice. The letter explained that the post for which plaintiff was first hired, a transitory position of Planning Technician III, required at a minimum that applicants have at least one year's experience as a "Planning Technician II." The letter goes on to assert that while plaintiff indicated on his 1978 job application that he had three years of such experience in his previous job as a Planning Technician for the Municipality of San Juan, defendant's investigation revealed that plaintiff had only two-and-a-half months of experience as a Planning Technician. Consequently, the letter explains,

Since you did not comply with the minimum requisites to hold the position as Evaluation Technician III, your appointment to said position is null and lacks validity. In the same manner, the subsequent regular appointments to Planning Technician IV and Executive Officer V are null, since they were made based on the experience illegally obtained through null appointments.

The letter also charged that plaintiff did not resign from his previous job with the Municipality of San Juan until a week after being appointed to the Department of Justice, thus receiving compensation for both these jobs during this one week. The letter concludes with the following:

The aforementioned facts constitute sufficient elements to file charges and to

---

1. Luis A. Feliciano, the other named defendant, has not appealed. We also note that there is no appeal presently before us concerning the district court's dismissal of plaintiff's claims relating to his demotion from the *trust* position to the career position. That was not a final decision within the meaning of 28 U.S.C. § 1291 (1982) as other claims such as plaintiff's right to reinstatement in his career position survived the summary judgment decision and are still pending below. *See Agromayor v. Colberg,* 738 F.2d 55, 57 (1st Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984). *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), does not give to a plaintiff the right to an immediate appeal from an interlocutory order granting qualified immunity to the defendant. Such an appeal must await resolution of the case by a complete final judgment.

2. These materials include the pre-termination and post-termination letters defendant sent to plaintiff, along with plaintiff's letter responding to, and acknowledging receipt of, the pre-termination letter. Plaintiff has not disputed the authenticity of these letters or the fact that he received defendant's letters. *Bonitz v. Fair,* 804 F.2d 164 (1st Cir.1986), does not prevent us from going beyond the complaint to consider these materials because the allegations in plaintiff's complaint fail to flesh out the alleged due process violation adequately. *Id.* at 168 n. 4. *See also Nunez v. Izquierdo-Mora,* 834 F.2d 19, 22 (1st Cir.1987) (examining undisputed record material not contained in complaint).

separate you from your present position as Executive Officer V which you at present hold.

As Secretary of Justice of this Department I notify you of your right to an informal administrative hearing to state your version and/or show cause as to why we should not proceed to dismiss you from the public service. Therefore, we are granting you a period of fifteen (15) work days as of the date of receipt of this letter, within which period you must request the hearing and/or submit in writing, if you so prefer, your reaction to these charges.

Plaintiff responded in a letter dated May 16, 1985, acknowledging receipt of defendant's letter and stating "that I will make the corresponding arguments in the Federal Court of Puerto Rico, where I have filed a lawsuit." Plaintiff never requested a pre-termination hearing, which was never held. On June 10, 1985, defendant Rivera Cruz wrote plaintiff a letter dismissing him from his position as Executive Functionary V. The letter restated what defendant had said in his May 13 pre-termination letter and advised plaintiff of his right to seek a post-termination administrative review of the dismissal before the Board of Appeals of the Personnel Administrative System as provided by P.R. Laws Ann. tit. 3, §§ 1394–1395 (1978).

Plaintiff has not been clear as to how the procedures defendant followed in dismissing him deprived him of due process. Putting aside his conclusory allegations that the pre-termination hearing offered to plaintiff was a "sham," plaintiff's claim

boils down to his argument that the pre-termination hearing offered to him should have been before an impartial decisionmaker rather than the same agency that had brought charges against him.[3] Defendant concedes that plaintiff, as a career employee, had a property interest in continuous employment. *See* P.R. Laws Ann. tit. 3, § 1336 (1978). *Cf. Laureano–Agosto v. Garcia–Caraballo*, 731 F.2d 101 (1st Cir. 1984). Defendant argues, however, that he complied with the due process requirements set forth in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and that, because he violated no clearly established law, he is entitled to qualified immunity.

We agree with defendant that he is entitled to qualified immunity from damages arising from plaintiff's claim that defendant violated his procedural due process rights in dismissing him from his career position.[4] The procedures defendant followed accord with the guidelines set forth in *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495. As there appears to have been no constitutional violation at all in the procedures afforded, it follows that defendant was entitled to qualified immunity because his "actions could reasonably have been thought consistent with the rights [he is] alleged to have violated." *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In *Loudermill*, the Supreme Court, while holding that "some kind of hearing" is required, 470 U.S. at 542, 105 S.Ct. at 1493, stated that "the pretermination 'hearing' ... need

**3.** Plaintiff has not argued on this appeal that the post-termination administrative review is inadequate in any way.

**4.** We address here only plaintiff's procedural due process claim. While plaintiff's counsel conceded at oral argument that plaintiff gave incorrect information on his application for his first job at the Department as a "transitory" employee, plaintiff argues that this did not provide defendant with just cause to dismiss him from his subsequent position as a *permanent* career employee because he acquired the requisite amount of experience for this permanent post before being appointed to it. This argument, which turns on an interpretation of Puer-

to Rico law, challenges the *substance* of defendant's decision to dismiss plaintiff, not the procedures followed in reaching it. While this argument may be relevant to plaintiff's First Amendment claims (which are discussed below in Section II), in that it questions the true motive behind the dismissal, it is not relevant to plaintiff's procedural due process claim. To the extent plaintiff is advancing the above argument as a means to recover solely on the basis of an alleged violation of *state* law, the Eleventh Amendment may, of course, bar such a claim. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

not be elaborate." *Id.* at 545, 105 S.Ct. at 1495. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495. The defendant complied with these guidelines. Defendant's May 13 letter notified plaintiff of the charges against him, explained the evidence behind the charges, and offered plaintiff a chance to respond to the charges in an informal hearing. Plaintiff chose not to accept this offer. In addition, *Loudermill,* in explaining why a pre-termination hearing is required, indicates that the pre-termination hearing may be before the employer: such a hearing is "the only meaningful opportunity to invoke the discretion of the *decisionmaker.*" *Id.* at 543, 105 S.Ct. at 1494 (emphasis added). It ensures that " 'at least the [employer] will be alerted to the existence of disputes about facts and arguments about cause and effect.' " *Id.* at 543–44 n. 8, 105 S.Ct. at 1494 n. 8 (brackets in original) (quoting *Goss v. Lopez,* 419 U.S. 565, 583–84, 95 S.Ct. 729, 741, 42 L.Ed. 2d 725 (1975)).

This circuit has found no due process violation in similar if not precisely the same circumstances:

the uncontroverted materials attached to defendants' motion show that plaintiff was given prior notice of the Retirement Board's intended action, was told the reason for it, and was afforded an opportunity (by letter) to convince the Board it was wrong. While plaintiff was not given a formal, evidentiary pre-termination hearing (a formal post-termination hear-

ing appears available under [the state statute] ), due process does not always require such a hearing, particularly when no pre-termination evidentiary hearing has been requested.

*Moody v. Town of Weymouth,* 805 F.2d 30, 33 (1st Cir.1986). *See also Brasslett v. Cota,* 761 F.2d 827, 836 (1st Cir.1985) (no due process violation where plaintiff was notified of possibility of discharge and was afforded an ample opportunity to defend his actions in a conference with defendant).

As both the law and the uncontroverted facts fail to indicate that defendant Rivera Cruz violated clearly established law regarding the due process procedures owing to plaintiff, Rivera Cruz is clearly entitled to qualified immunity from any damages that might conceivably result from plaintiff's due process claim. To be sure, this is a case where it has been shown not only that defendant did not violate law *clearly established* at the time of the event, but did not violate the law *at all,* then or now. It might be argued that defendant's right to prevail "on the merits" forecloses his right to prevail on qualified immunity, thus barring the present interlocutory appeal. In all the circumstances of this claim, however, "the merits" and the issue of qualified immunity are inexorably intertwined. To afford Rivera Cruz immunity only if the law had been a little less settled in his favor would seem ridiculous. Thus we hold that defendant Rivera Cruz prevails on his defense of qualified immunity to plaintiff's due process claim.[5]

## II. FIRST AMENDMENT CLAIMS

In his amended complaint, plaintiff alleged that he is a member of Partido Nue-

---

**5.** In taking this position, our analysis is in accord with *Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), and with First Circuit precedent such as *Emery v. Holmes,* 824 F.2d 143, 147 (1st Cir.1987) (considering whether there is a genuine issue of material fact such as would bar the qualified immunity claim) (citing *Anderson* ). Our view differs from the panel's in *Roure v. Hernandez Colon,* 824 F.2d 139, 143 (1st Cir.1987) (argument that a genuine issue of material fact did not exist regarding qualified immunity is "outside the scope of our limited review in these types of interlocutory appeals"). *See also Bonitz v. Fair,* 804 F.2d 164 (1st Cir.1986); *Cheveras Pacheco v.*

*Rivera Gonzales,* 809 F.2d 125 (1st Cir.1987); *Juarbe–Angueira v. Arias,* 831 F.2d 11 (1st Cir. 1987), *cert. denied,* — U.S. —, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988). While *stare decisis* requires panels in this circuit to follow circuit precedent, we observe that the *Roure* panel did not cite to *Anderson,* suggesting that its analysis did not take into account that precedent, which the Supreme Court had just handed down. On the other hand, the *Emery* decision, decided shortly after *Roure,* specifically cited to *Anderson.* We believe that insofar as *Roure* differs from today's approach, this was because *Anderson* had yet to be called to the *Roure* panel's attention.

vo Progresista ("PNP") and that the defendants are members of the Partido Popular Democratico ("PPD"). After eight consecutive years in power in Puerto Rico, the PNP lost the general elections to the PPD in November 1984. Plaintiff alleged that the defendants, upon entering office, not only demoted him from his trust position as Assistant Secretary for Administration to the career position of Executive Functionary V because he is a member of the PNP, but also subsequently dismissed him from his career position because of his political affiliation. This alleged political discharge, according to plaintiff, violated his First Amendment rights. *Branti*, 445 U.S. 507, 100 S.Ct. 1287; *Elrod*, 427 U.S. 347, 96 S.Ct. 2673. *See generally Jimenez*, 807 F.2d 236.

Plaintiff alternatively charged in his amended complaint that defendant dismissed him from his career position in retaliation for his having brought the original action against his demotion. According to plaintiff, the alleged retaliatory discharge also violated his First Amendment rights. *See In re Primus*, 436 U.S. 412, 422–32, 98 S.Ct. 1893, 1899–1905, 56 L.Ed.2d 417 (1978); *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Hall v. Ochs*, 817 F.2d 920, 925 (1st Cir.1987).

Defendant makes at least two responses to these allegations.[6] On the merits, he denies that he fired plaintiff because of his political affiliation or to retaliate. Rather he asserts that the firing was for just cause, because of plaintiff's misrepresentations in 1978 and other misconduct when hired by the Department of Justice, as described in part I, *supra*.

In respect to qualified immunity, defendant makes the further argument that *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), renders immaterial any inquiry into defendant's state of mind, even where, as here the defendant's motivation in effecting the discharge is an essential element of plaintiff's constitutional claim.

We find no merit in this latter contention. *Harlow*, to be sure, in an attempt to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment," eliminated the subjective component of the qualified immunity inquiry.[7] 457 U.S. at 818, 102 S.Ct. at 2738. The Court in *Harlow* stated that "bare allegations of malice should not suffice to subject government officials either to the cost of trial or to the burdens of broad-reaching discovery," and held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 817–18, 102 S.Ct. at 2738.

But *Harlow* does not rule out the need to inquire into the actual reasons behind an official's conduct when the official's state of mind is a necessary component of the constitutional violation he allegedly committed. *Harlow* merely holds that, in determining an official's claim of qualified immunity, the court judges the official's then knowledge of the statutory and constitutional law, and the relevant circumstances, by the standard of "a reasonable official." Thus the official's abnormal expertise in law, or his subjective, below par, lack of expertise, makes no difference. But determining whether defendant fired an employee for a discriminatory reason, or, on the other hand, for just cause, is an altogether different matter.

Here defendant is asking us to accept at face value *his* version of the motivation behind plaintiff's dismissal. Such an interpretation of *Harlow* would permit

---

**6.** Defendant does not defend his discharge of plaintiff on the ground that political affiliation was an appropriate requirement for the effective performance of defendant's career position as Executive Functionary V. Nor does he contend that the law allowed, or might be taken to allow, a discharge in retaliation for this lawsuit.

**7.** This subjective component barred qualified immunity if a defendant "took the [alleged wrongful] action *with the malicious intention* to cause a deprivation of constitutional rights or other rights...." *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2737 (emphasis in original).

an official to be granted qualified immunity as a matter of law even though the principal disputed question of fact in the case—the true purpose of intent motivating the official's conduct—remains unresolved. More accurately, [the defendant's position would mean that] the principal disputed question of fact, which forms the basis of the substantive claim, is subsumed by the legal immunity inquiry and implicitly resolved by the court against the plaintiff when it concludes, on the basis of nothing more than the official's pretextual assertions, that the allegedly unconstitutional conduct contravened no clearly established law.

Note, *Qualified Immunity for Government Officials: The Problem of Unconstitutional Purpose in Civil Rights Litigation*, 95 Yale L.J. 126, 138 (1985). Defendant's interpretation of *Harlow* "would insulate officials from liability in all cases in which the substantive prescription makes the official's state of mind an essential component of the alleged constitutional violation." *Martin v. District of Columbia Metropolitan Police Department*, 812 F.2d 1425, 1433 (D.C.Cir.), *en banc order vacated and Section IV and dissenting opinion reinstated*, 824 F.2d 1240 (D.C.Cir. 1987).

We think it clear the Court intended no such result. The plaintiff in *Harlow* had alleged that the defendant had violated his First Amendment rights by dismissing him in retaliation for testifying before a congressional committee. 457 U.S. at 802, 102 S.Ct. at 2730. The substantive law governing plaintiff's claim required him to establish that his protected speech was a "substantial or motivating factor" in his dismissal. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). As the D.C. Circuit has pointed out,

> [h]ad the Court intended its formulation of the qualified immunity defense to foreclose *all* inquiry into the defendants' state of mind, the Court might have instructed the entry of judgment for defendants ... on the constitutional claim without further ado. In fact, the Court

returned the case to the district court in an open-ended remand, a disposition hardly consistent with a firm intent to delete the state of mind inquiry from every constitutional tort calculus.

*Martin*, 812 F.2d at 1432. *See Harlow*, 457 U.S. at 819–20, 102 S.Ct. at 2738–39. Indeed, the Court in *Harlow* stated that on "summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether the law was clearly established at the time the action occurred." 457 U.S. at 818, 102 S.Ct. at 2738. It necessarily follows from this that a court may consider a defendant's motivations when those motivations are an essential element of the "currently applicable law" and the "law ... at the time the actions occurred."

We thus conclude that *Harlow* will not bar inquiry into a defendant's state of mind when the applicable law makes the defendant's state of mind (as distinct from defendant's *knowledge* of the law) an essential element of plaintiff's constitutional claim. Other courts have reached similar conclusions. *Gutierrez v. Municipal Court of Southeast Judicial District*, 838 F.2d 1031, 1051 (9th Cir.1988); *Martin*, 812 F.2d at 1433. *See also Anderson v. Creighton*, — U.S. ——, 107 S.Ct. 3034, 3049 n. 12, 97 L.Ed.2d 523 (1987) (Stevens, J., dissenting) (*Harlow* may be inapplicable when plaintiff can only obtain damages if official's state of mind is found to be culpable); *Wright v. South Arkansas Regional Health Center*, 800 F.2d 199, 205 (8th Cir.1986) (many cases will present factual questions of motivation incapable of resolution on summary judgment).

Given our above conclusion, *Harlow* will not prevent inquiry as this proceeding continues below into the classic "mixed motive" question that may be present in this case. *See Mt. Healthy City School District Board of Education*, 429 U.S. at 287, 97 S.Ct. at 576. In order for plaintiff to recover on his First Amendment claims, he will have to show "that his conduct was constitutionally protected, and that this conduct was a 'substantial factor'—or, to put it in other words, that it was a 'motivat-

ing factor' " in defendant's decision to dismiss the plaintiff. *Id.* If so, the defendant has the burden of showing that he would have reached the same decision to dismiss plaintiff in the absence of the protected conduct. *Id. See also Brasslett v. Cota,* 761 F.2d at 827.

As there was a disputed factual issue regarding why defendant dismissed plaintiff, the district court was in no position to grant summary judgment in defendant's favor on the issue of qualified immunity against plaintiff's First Amendment claims. Resolution of this issue is a predicate to any meaningful qualified immunity analysis. If plaintiff were fired because of his political affiliation, the question of whether or not the law then existing clearly permitted this is an altogether different question from whether the law allowed him to be fired because he had misrepresented his qualifications in his initial employment application. Similarly, if he were fired in retaliation for bringing this action, the question of whether the law clearly permitted that is altogether different from if he were fired because of his prior misrepresentations, raising the question whether the law clearly permitted firing for *that* reason. These matters—namely, why he was fired—must be settled by further fact-finding before, or in conjunction with, the qualified immunity issue.

It may well be that once the above matters are settled, there will be no real immunity issue left to decide anyway. If, for example, plaintiff was fired from his career post because of his political affiliation, this would seem to be clearly improper. That position is established as nonpolitical under Puerto Rico law, and thus there would be no meaningful immunity claim. *See Juarbe Angueira v. Arias,* 831 F.2d 11, 16 (1st Cir.1987), (collecting cases in which courts have held there is constitutional protection from political dismissal), *cert. denied,* — U.S. ——, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988). Likewise, if he was fired in retaliation for bringing a political discrimination suit, since the law seems to have been settled against such a retaliatory discharge, there might also be no immunity

claim. *See In re Primus,* 436 U.S. at 422–32, 98 S.Ct. at 1899–1905; *NAACP,* 371 U.S. 415, 83 S.Ct. 328; *Hall,* 817 F.2d at 925. On the other hand, if defendant can show that there was good cause to fire plaintiff, based on prior misconduct, and that he would have been fired for such cause even in the absence of plaintiff's protected conduct, there would be no cognizable constitutional violation at all. *See Mt. Healthy City School District Board of Education,* 429 U.S. at 287, 97 S.Ct. at 576.

Defendant argues that we should hold plaintiff to a more demanding standard of proof when a defendant moves for a summary judgment based on qualified immunity. Plaintiff asks us to adopt an approach used by the D.C. Circuit: "plaintiff, to avert dismissal short of trial, must come forward with something more than inferential or circumstantial support for his allegation of unconstitutional motive. That is, some direct evidence that the official's actions were improperly motivated must be produced if the case is to proceed to trial." *Martin,* 812 F.2d at 1435. The short answer to this argument is that we do not find plaintiff's claims so unsupported or implausible on their face as to warrant dismissing them. Especially is this so where no discovery has yet occurred, the district court having stayed discovery pending its qualified immunity ruling.

It is true that the Supreme Court has indicated that district courts should protect public officials from excessive discovery where the facts are such that their immunity is obvious without more:

> One of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the "broad ranging discovery" that can be "peculiarly disruptive of effective government." For this reason, we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation.

*Anderson,* 107 S.Ct. at 3042 n. 6. In *Anderson,* a case involving the alleged violation of the Fourth Amendment, the Court instructed the district court on remand to first determine

whether the actions the [plaintiffs] allege [the defendant] to have taken are actions that a reasonable officer could have believed lawful. If they are, then [defendant] is entitled to dismissal prior to discovery. If they are not, and if the actions [defendant] claims he took are different from those the [plaintiffs] allege (and are actions a reasonable officer could have believed lawful), then discovery may be necessary before [defendant's] motion for summary judgment on qualified immunity grounds can be resolved. Of course, any such discovery should be tailored specifically to the question of [defendant's] qualified immunity.

*Anderson,* 107 S.Ct. at 3042 n. 6.[8]

Cases under section 1983, however, are both enormously fact specific and enormously varied in legal theory depending on the underlying constitutional provision or federal statute. Here, before the qualified immunity issue can be analyzed properly, it is necessary to establish the reason or reasons for plaintiff's firing. In this case, it may be that the qualified immunity defense is best determined at the same time the "merits" of plaintiff's claims are finally resolved. This seems to have been what the district court had in mind in denying summary judgment on qualified immunity at this preliminary stage. We see no reason to fault the district court's judgment in this regard.

In conclusion, 1) defendant was entitled to qualified immunity from damages arising out of plaintiff's claim that defendant denied him due process in dismissing him from his career position. Accordingly, the district court's refusal to grant summary judgment on that claim is reversed; 2) the district court properly denied summary judgment on grounds of qualified immunity against plaintiff's First Amendment claims related to his dismissal. We emphasize, of course, that while we uphold the denial of

qualified immunity at this stage in the proceedings, this does not prevent the qualified immunity defense from being further considered, either at trial or otherwise, when the record is more complete.

REVERSED IN PART AND OTHERWISE AFFIRMED.

---

**8.** We note that while the approach to resolving qualified immunity enunciated in *Anderson* entails a two-step process, a defendant is not entitled to bring *two* interlocutory appeals from his claim of qualified immunity, first on the pleadings and then on the facts as produced after discovery. *See Kaiter v. Town of Boxford,* 836 F.2d 704 (1st Cir.1988); *Fernandez v. Leonard,* 784 F.2d 1209, 1214 n. 2 (1st Cir.1986); C. Wright, A. Miller & E. Cooper, 15 *Federal Practice & Procedure* § 3911, at 111 (Supp.1987).