914 F.2d 257
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Hassan MADYUM; Karim Abdul Rahim, Plaintiffs-Appellees,
v.
Donal CAMPBELL; Alton Hesson; Mike Slaughter; Lonzo
Duncan; William Richard Peebles; Mark Violet;
John Sullivan; Mark Kee; Frank
Herroux; Billy Hardy;
Defendants-Appellants.
 No. 89-5411.
 United States Court of Appeals, Sixth Circuit.
 Sept. 13, 1990.
 
 Before BOYCE F. MARTIN, Jr. and RALPH B. GUY, Jr., Circuit Judges; and DOWD, District Judge.*
 PER CURIAM.
 
 
 1
 The warden, two associate wardens and seven correctional officers of the Turney Center Industrial Prison in Olney, Tennessee appeal the district court's order denying their motion for summary judgment based on qualified immunity in this prisoner civil rights action. We affirm.
 
 
 2
 Hassan Madyum and Karim Rahim are inmates of the Turney Center and are members of the Islamic, or Muslim, faith. As part of their religion, they are obligated to make a prayer to Allah every morning before sunrise, and are further obligated to bathe themselves before morning prayer, a practice known as "ablution."
 
 
 3
 Madyum and Rahim allege that beginning sometime in or before December, 1986, the prison officials conspired to interfere with their religion by preventing their performance of the morning ablutions. They claim that the prison officials agreed to justify this interference through a sham interpretation of a Turney Center "post order," which purports to govern the use of the bathroom facilities during the "third shift" at the prison, which includes the early morning hours. Additionally, Madyum and Rahim claim that the prison officials have interfered with their morning religious observances by informing them that they could no longer perform their morning ablutions, by preparing disciplinary reports against them for their attempts to do so, and by refusing to allow them out of their cell before dawn even to relieve themselves. Madyum and Rahim contend that these actions were a direct result of the prison officials' anti-Islamic animus and their intent to harass Madyum and Rahim for exercising their religion.
 
 
 4
 Madyum and Rahim filed separate pro se complaints on February 2, 1987, and March 27, 1987. Following consolidation of the cases and appointment of counsel, appointed counsel filed an amended complaint. The amended complaint presents three claims. Count 1 alleges that the prison officials' actions constitute a violation of the prisoners' rights to the free exercise of their religion, for which the prison officials are liable under 42 U.S.C. Sec. 1983. Count 2 asserts that the prison officials conspired to deprive Madyum and Rahim of the equal protection of the laws in violation of 42 U.S.C. Sec. 1985(3). Count 3 alleges that the current interpretation and application of the post order unduly burdens the prisoners' right to the free exercise of their religion, without sufficient justification by legitimate penological or institutional interests. Madyum and Rahim seek a declaration that the post order, as interpreted and applied to them, is unconstitutional, and further seek a permanent injunction prohibiting the application of the post order so as to prevent the performance of their morning ablutions.
 
 
 5
 The prison officials filed a motion to dismiss the prisoners' complaint and a motion for summary judgment. The officials moved to dismiss Count 2 of the complaint based on the intra-corporate conspiracy doctrine, arguing that the doctrine serves to bar actions for conspiracy under 42 U.S.C. Sec. 1985(3) against state officials working for the same governmental entity. In their motion for summary judgment, the prison officials claimed that the post order is reasonably related to legitimate penological interests and that they are immune from liability pursuant to the doctrine of qualified immunity.
 
 
 6
 Following a hearing on these motions, the magistrate issued a report and recommendation in which he recommended that each of the motions be denied. As to the motion to dismiss, the magistrate found that the intra-corporate conspiracy doctrine was inapplicable to the prisoners' claim under 42 U.S.C. Sec. 1985(3) because the claim concerned continuous acts of discrimination, as opposed to a single act, carried out as a result of personal discriminatory animus. As to the motion for summary judgment, the magistrate determined that there was a genuine issue of material fact as to whether the prison officials' interpretation of the post order was reasonably related to legitimate penological interests. In addition, the magistrate found that the existence of anti-Islamic animus was a core element in the prisoners' claims for monetary relief in Counts 1 and 2, and thus the officials were not entitled to summary judgment on the basis of qualified immunity. The district court overruled the prison officials' objections to the magistrate's report and denied each of their motions. This appeal followed.
 
 
 7
 Under Mitchell v. Forsyth, 472 U.S. 511 (1985), the prison officials have the right to this interlocutory appeal based upon their claim of qualified immunity. The officials also seek review of the two other issues raised in their pre-trial motions. Those issues, however, are not appealable because there was not a "final decision" of the district court on those issues as required under 28 U.S.C. Sec. 1291. Thus, we will only address the issue of qualified immunity.
 
 
 8
 The prison officials maintain that they are immune from liability for money damages under the doctrine of qualified immunity. The doctrine of qualified immunity protects government officials from liability unless the conduct complained of violates clearly established statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Long v. Norris, Nos. 89-5377/5378/5379, slip op. at 4 (6th Cir. _____, 1990). The officials contend that it is not clearly established that Islamic inmates have a constitutional right to be released from a general lockdown to engage in their religious practices.
 
 
 9
 The officials' argument misconstrues the nature of the constitutional right asserted by Madyum and Rahim. Their claim is based upon their allegation that they were discriminated against as a direct result of a religious-based animus on the part of the prison officials. In other words, Madyum and Rahim assert that they have been mistreated and discriminated against because they are Muslims. Thus, the right asserted by Madyum and Rahim is a clearly established constitutional right.
 
 
 10
 In addressing the issue of qualified immunity, we have recently held that when purposeful discrimination is an element of a constitutional claim, inquiry into the officials' motive or intent is essential. Poe v. Haydon, 853 F.2d 418, 431 (6th Cir.1988). In such a case, therefore, summary judgment on a qualified immunity defense is not appropriate if there is a genuine issue of material fact concerning the officials' motivation. Id. at 432.
 
 
 11
 In this case, as the magistrate correctly found, there is a genuine issue of material fact as to whether the prison officials have discriminated against Madyum and Rahim because of their Islamic faith. Accordingly, under the standard set forth in Poe, summary judgment was clearly inappropriate.
 
 
 12
 The judgment of the district court is affirmed.
 
 
 13
 RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.
 
 
 14
 I concur in that portion of the court's opinion that keeps alive plaintiffs' claims for declaratory and injunctive relief. I dissent, however, on the issue of immunity from money damages.
 
 
 15
 Quite different concerns are presented with regard to the plaintiffs' suit for damages against the individual defendants. Government officials engaged in the performance of discretionary functions are accorded qualified immunity from suit for money damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Anderson v. Creighton, 483 U.S. 635 (1987), the Supreme Court "pointed out that it would be improper to look at the legal right in the abstract in determining whether the law was clearly established at the time of the defendant's alleged violation." Poe v. Haydon, 853 F.2d 418, 423 (6th Cir.1988). The Court wrote:
 
 
 16
 [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
 
 
 17
 Anderson, 483 U.S. at 640 (citation omitted).
 
 
 18
 In count one of their complaint, plaintiffs allege that various defendants at various times mistreated them because of their Islamic faith. At least since Niemotko v. Maryland, 340 U.S. 268, 272-73 (1951), it has been clearly established that the equal protection clause of the fourteenth amendment prohibits state authorities from discriminating against an individual because of his religious beliefs. The free exercise clause of the first amendment is an independent source of the same prohibition. Employment Div., Dep't of Human Resources of Oregon v. Smith, 110 S.Ct. 1595, 1599 (1990). As the Court observed in Sherbert v. Verner, 374 U.S. 398 (1963), the free exercise clause means that government may not "penalize or discriminate against individuals or groups because they hold religious views abhorrent to the authorities." Id. at 402 (citing Fowler v. Rhode Island, 345 U.S. 67 (1953)).
 
 
 19
 The plaintiffs' right to be free from government action taken with the intent of disadvantaging or punishing them because of their religious beliefs was doubtless well established at the time of the alleged discriminatory actions. Accordingly, the plaintiffs can resist summary judgment by adducing evidence that the defendants acted with the requisite religious-based animus. See Poe, 853 F.2d at 432; Feliciano-Angulo v. Rivera-Cruz, 858 F.2d 40, 45 (1st Cir.1988) (prohibition of inquiry into official's "subjective" knowledge of the law expressed in Harlow does not prohibit inquiry into official's "intent" to violate a constitutional right where such intent forms an element of the violation).
 
 
 20
 The strong policy of insulating government officials from the burden of defending meritless actions, however, requires that the plaintiffs not be permitted to proceed beyond the summary judgment stage with mere allegations of discriminatory animus. As we wrote in Poe:
 
 
 21
 Where ... discovery has taken place and the defendant officials have moved for summary judgment on the basis of qualified immunity, we believe the plaintiff must present direct evidence that the officials' actions were improperly motivated in order to have any hope of defeating the motion. The plaintiff, "to avert dismissal short of trial, must come forward with something more than inferential or circumstantial support for [his] allegation of unconstitutional motive."
 
 
 22
 853 F.2d at 432 (quoting Martin v. D.C. Metro. Police Dept., 812 F.2d 1425, 1435 (D.C.Cir.1987)).
 
 
 23
 The facts of this case simply do not contain any such direct evidence of animus based on religious belief. Neither plaintiff has testified to having heard even one expression of anti-Islamic feeling on the part of the defendant correctional officers. While the officers' refusal to allow Madyum and Rahim to use the bathroom facilities, and the abrupt manner in which the plaintiffs were removed from the showers may demonstrate animus, the ill feeling would appear to have arisen as a result of the plaintiffs' refusal to submit to the authority of prison officials, not as a result of the plaintiffs' adherence to the Islamic faith. Accordingly, I conclude that summary judgment ought to have been granted to the individual defendants on the ground of qualified immunity as to the claims for money damages.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation