Benoit v. Claremont                    CV-94-268-JD  11/03/95
                 UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE

James Benoit

        v.                             Civil No. 94-268-JD

City of Claremont, et al.


                            O R D E R


        The plaintiff, James Benoit, brings this action against the

defendants, City of Claremont, City of Claremont Police Depart-

ment ("Department"), Claremont Police Commission ("Commission")

and Police Chief Michael L. Prozzo, Jr., pursuant to 42 U.S.C. §§

1981 and 1983, for alleged violations of the plaintiff's right to

free speech under the First Amendment.  Before the court is

Prozzo's Motion for Summary Judgment (document no. 13) on the

issue of qualified immunity.


                          Background[1]

        From March 29, 1979, until February 19, 1988, James Benoit

was a police officer with the Claremont, New Hampshire, Police

_____

        [1]The court's recitation of the facts relevant to the instant
motion are either not in dispute or have been alleged by the
plaintiff.

Department.[2]  Complaint at ¶ 3; Affidavit of Michael L. Prozzo, Jr. in support of Motion for Summary Judgment ("Prozzo Affidavit") at ¶¶ 4, 6.  In the summer of 1989, Benoit again applied for a position with the Department and was sworn in on August 11, 1989.  Prozzo Affidavit at ¶¶ 7, 9.  During the plaintiff's second tenure with the Department, he was under the command of Prozzo, who was the police chief from November 1988, through December 1994.  Id. at ¶ 2.  On May 10, 1994, Benoit again resigned from the Department.  Complaint at ¶ 24; Prozzo Affidavit, Ex. 31.

During his tenure with the Department, Benoit received commendations for

> outstanding police performance in apprehending a
> burglar (November 21, 1983), for his work in combatting
> the influx of illegal drugs (May 8, 1980, October 30,
> 1990, June 1, 1991), for solving serious crimes against
> persons (December 8, 1989), for averting a tragedy in
> connection with his efforts to prevent the operator of
> a burning car from approaching and endangering students
> in a Claremont school yard (April 13, 1993), for
> outstanding conduct (November 29, 1983, April 16,
> 1984), and for disarming a dangerous person with a
> concealed firearm and protecting his fellow officers
> (March 21, 1991).

Complaint at ¶ 4.  In addition, the plaintiff received many written expressions of support and appreciation from members of

---

[2]The plaintiff resigned because he was suffering from depression caused by the termination of a personal relationship. Affidavit of James Benoit ("Benoit Affidavit"), Ex. B.

the Claremont community for his performance as a police officer. Id. at ¶ 5.

While employed as a police officer, Benoit frequently alerted his superiors to a variety of concerns related to personal and public safety and departmental procedure. Complaint at ¶ 11. On August 23, 1993, the plaintiff requested that patrol officers properly be vaccinated given their risk of exposure to rabid animals. Prozzo Affidavit at ¶ 19. On September 21, 1993, Benoit further requested that patrol cars no longer be used to dispatch wild animals. Id., Ex. 11. Instead, he recommended that city employees transport the animals or, in the alternative, that each patrol car be equipped with sealed animal storage containers. Id. The Department responded to the plaintiff's concerns by issuing updated animal control procedures effective November 4, 1993. Id., Ex. 12.

On a separate occasion, the plaintiff prevented the operator of a burning vehicle from approaching and endangering children in a schoolyard. Complaint at ¶ 14. In the course of this rescue, Benoit was unable to communicate with other officers to warn them of impending danger. Id. As a result, Benoit nearly collided with another police car as he attempted to position his vehicle in front of the burning car and bring it to a halt. Id.

3

Following this event, the plaintiff requested that the Department review its communication policies. Id.

Shortly after expressing concern about the communication policies, the plaintiff notified his superiors that the Department's policies governing police response to bank alarms also presented various dangers. Complaint at ¶ 15. Specifically, the plaintiff observed that the "present rules place the responding officer in danger of drawing fire from perpetrators without permitting safe responding fire and place the public in danger of being taken hostage." Id.

For several months, Prozzo was not aware of the plaintiff's recommendations regarding "radio communication breakdown" or bank alarm procedures because Benoit's superiors had failed to relay these concerns to Prozzo. Prozzo Affidavit at ¶ 21; Complaint at ¶¶ 14-16. However, upon learning of the concerns, Prozzo evaluated the issues raised and determined that the existing procedures should not be modified. Prozzo Affidavit at ¶ 21.

In June 1993, Benoit informed the Department that dangerous incidents involving the misuse of handguns had occurred in August 1990 in the locker room and elsewhere at police headquarters. Complaint at ¶ 18; Prozzo Affidavit at ¶ 28. The plaintiff alleged that certain officers had aimed handguns at, or in the general direction of, the plaintiff and other officers. Prozzo

4

Affidavit, Ex. 20. Upon learning of these incidents, Prozzo decided that he could not undertake an investigation because the reported events had occurred nearly three years earlier. Id. at ¶ 28.

On December 26, 1993, Benoit reported a more recent incident involving the misuse of a handgun. Prozzo Affidavit at ¶ 29. Because this event was reported promptly, an internal investigation was conducted and the offending officer was disciplined by means of a written warning. Id. In addition, Prozzo authorized the issuance of a special order reminding officers of the prohibition against the removal of firearms from holsters without justification. Id.; Complaint at ¶ 18.

In early 1993, an officer serving on the night shift left the Department, thereby requiring the Department to reassign an officer to fill the vacancy. Prozzo Affidavit at ¶ 27. Consistent with departmental policy, the Department determined that the least senior officer on the day shift would be transferred. Id. The Department determined that Benoit was the least senior officer on the day shift after having calculated the length of his employment from 1989, the date of his re-hire. Id. at ¶¶ 22, 27. On April 20, 1993, Benoit submitted a grievance letter contesting Prozzo's failure to include his initial nine years of employment when determining seniority. Id. at ¶ 22. On May 28,

5

1993, Prozzo denied the grievance request and provided a copy of the denial to the police union. Id. at ¶ 23.

On June 4, 1993, the union sent a grievance letter to the Commission echoing Benoit's contention that the collective bargaining agreement requires that seniority be calculated from the date of initial hire, whether or not employment was continuous. Prozzo Affidavit at ¶ 24 & Ex. 9 at 21. On September 22, 1993, the Commission concluded that the plaintiff's seniority had been calculated correctly by Prozzo. Id., Ex. 17. Subsequently, the union requested additional time to consider further appeal options but no such action followed. Id. at ¶ 26. On November 10, 1993, Benoit's work schedule was changed from the day shift to the night shift. Id., Ex. 19.

By early 1994, the plaintiff had become increasingly troubled by the Department's failure to address his complaints adequately. See Benoit Affidavit, Ex. B. Prozzo communicated the plaintiff's concerns to the Commission, which invited the plaintiff to appear before it to address these issues personally. Prozzo Affidavit, Ex. 28. On or about April 5, 1994, Benoit testified before the Commission, following which the Commission directed Prozzo to order Benoit to undergo a Fitness For Duty Evaluation ("psychological evaluation"). Id. at ¶ 31 & Ex. 26. Prozzo issued the order on April 11, 1994. Id., Ex. 26.

6

Pending the outcome of the psychological evaluation, Benoit was placed on administrative leave. Prozzo Affidavit at ¶ 32. During this period, Prozzo ordered the plaintiff to surrender his badge and gun, and two officers were sent to Benoit's home to collect the items. Id. at ¶ 33; Complaint at ¶ 21. When the Department learned that the items were located in Benoit's locker at the police station, Prozzo ordered the locker "sealed off." Prozzo Affidavit at ¶ 33.

The psychological evaluation concluded that Benoit was "fit for duty," and following receipt of this determination, the Department instructed Benoit to return to duty on April 30, 1994. Prozzo Affidavit at ¶ 34. Although the written "return to duty" notice of April 28, 1994, did not contain any special conditions for Benoit's return to active duty, Benoit asserts that an unnamed lieutenant in the Department informed him that he would undergo a sequence of weekly or monthly performance evaluations upon his return. Complaint at ¶ 23; Prozzo Affidavit, Ex. 30. Instead of returning to work, the plaintiff resigned, charging constructive termination. Prozzo Affidavit at ¶ 36.

The instant lawsuit followed. To date discovery has been limited to the issue of qualified immunity.

<u>Discussion</u>

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." <u>Snow v. Harnischfeger Corp.</u>, 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting <u>Wynne v. Tufts Univ. Sch. of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992), <u>cert. denied</u>, 113 S. Ct. 1845 (1993)), <u>cert. denied</u>, 115 S. Ct. 56 (1994). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Quintero de Quintero v. Aponte-Roque</u>, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)), <u>cert. denied</u>, 112 S. Ct. 2965 (1992). However, once the defendant has submitted a properly supported motion for

8

summary judgment, the plaintiff "may not rest upon mere allegation or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)). Even when a defendant uses qualified immunity as a basis for summary judgment, the court must remain "[c]onsistent with the method of Fed. R. Civ. P. 56(c)." Buenrostro v. Collazo, 973 F.2d 39, 41 (1st Cir. 1992).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To be "clearly established," the contours of right must be sufficiently clear so that a reasonable official would understand that his actions violate that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Although Harlow sets forth the qualified immunity standard in objective terms, in a mixed-motive case the court's qualified immunity analysis also requires consideration of whether the defendant did, in fact, intentionally violate the plaintiff's rights. See Broderick v. Roache, 996 F.2d 1294, 1298-99 (1st Cir. 1993); Feliciano-Angulo v. Rivera-Cruz, 858 F.2d 40, 46 (1st

9

Cir. 1988) ("Harlow will not bar inquiry into a defendant's state of mind when the applicable law makes the defendant's state of mind (as distinct from defendant's knowledge of the law) an essential element of plaintiff's constitutional claim"). Thus, where the plaintiff has adduced evidence from which a jury reasonably could find that the plaintiff's protected speech motivated the adverse employment action, the issue of qualified immunity cannot be resolved until the ultimate question of the plaintiff's intent is determined by the finder of fact. Id. at 47 (determination of the defendant's subjective motivation for the adverse employment action "is a predicate to any meaningful qualified immunity analysis"). Conversely, where the plaintiff fails to establish a genuine dispute whether the plaintiff's exercise of a protected right was a substantial or motivating factor in the defendant's adverse employment decision, the defendant may invoke qualified immunity. See, e.g., Harris v. Eichbaum, 642 F. Supp. 1056, 1065-66. (D. Md. 1986).

## I.   Count One: Retaliation Against Benoit

The plaintiff asserts that Prozzo violated his First Amendment right to free speech by retaliating against him for bringing matters of public concern to the Department's attention. In its motion, the defendant argues that the plaintiff's allega-

10

tions do not constitute a cognizable First Amendment claim because the plaintiff did not engage in protected speech regarding matters of public concern.  In addition, the defendant argues that the allegations lack a factual nexus between the concerns voiced by Benoit and those departmental decisions that adversely affected Benoit.

It is well established that a state "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."  Connick v. Myers, 461 U.S. 138, 142 (1983).  Moreover, "First Amendment protection applies when a public employee arranges to communicate privately with his employer rather than to express his views publicly."  Connick, 461 U.S. at 146 (citing Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410, 415-16 (1979)).  The First Circuit has endorsed a three-step analysis to determine whether a public employee has presented an actionable First Amendment claim.  O'Connor v. Steeves, 994 F.2d 905, 912 (1st Cir. 1993), cert. denied, 114 S. Ct. 634 (1993).  The two initial steps determine whether the plaintiff's speech is constitutionally protected.  The third step addresses the defendant's motivation for imposing the adverse action about which the plaintiff complains.  The court addresses each step seriatim.

11

Step 1: Matter of Public Concern

The court must make a threshold determination, "on the basis of `the content, form, and context of a given statement, as revealed by the whole record,' whether the employee was speaking `as a citizen upon matters of public concern,' or, alternatively, `as an employee upon matters only of personal interest.'" O'Connor, 994 F.2d 905, 912 (1st Cir. 1993) (quoting Connick, 461 U.S. at 147-48). "If an employee's speech `cannot be fairly characterized as constituting speech on a matter of public concern,' then its First Amendment value is low and `a federal court is not the appropriate forum in which to review the wisdom of a personnel decision' arising therefrom." Id. (quoting Connick, 461 U.S. at 146-47).

The First Circuit has noted that the circumstances of a particular case may govern the appropriate approach under Connick. Id. at 913. "Where a public employee speaks out on a topic which is clearly a legitimate matter of inherent concern to the electorate, the court may eschew further inquiry into the

12

employee's motives as revealed by the `form and context' of the expression." Id. at 913-14. In contrast,

> public-employee speech on a topic which would not
> necessarily qualify, on the basis of its content alone,
> as a matter of inherent public concern (e.g., internal
> working conditions, affecting only the speaker and co-
> workers), may require a more complete Connick analysis
> into the form and context of the public-employee
> expression, `as revealed by the whole record,' . . .
> with a view to whether the community has in fact
> manifested a legitimate concern in the internal
> workings of the particular agency or department of
> government, and, if so, whether the `form' of the
> employee's expression suggests a subjective intent to
> contribute to any such public discourse.

Id. at 914 (citation and emphases omitted).

The plaintiff's claim requires a complete Connick analysis because his speech is not necessarily of "inherent concern" to the electorate. Nonetheless, Benoit's statements concerning the vaccination of police officers, modification of communication policies, response to bank alarms, and misuse of handguns do present issues of public concern. Although not necessarily aware of inter-departmental police policy and procedure, the public has an obvious and legitimate interest in the efficiency, effective-ness, and safety of police departments. Similarly, the public is interested in allegations of police misconduct, such as the careless brandishing of firearms reported by the plaintiff. Significantly, the plaintiff's affidavit and his past receipt of numerous achievement awards indicate that his concern for public

13

welfare, and not just his personal well-being, led him to speak out.

Benoit's form of expression was consistent with the usual method of addressing issues of concern within the ranks of the Claremont Police Department. See generally Police Manual for the Police Department of the City of Claremont. The plaintiff, upon identifying a perceived deficiency, notified his commanding officer. This is a logical means of resolving issues in a law-enforcement environment. Accordingly, the court finds that the form in which the plaintiff expressed matters of concern was appropriate under the circumstances.

The context of the communications, for the most part, is consistent with the plaintiff's position that he was a public employee notifying superiors of deficiencies in the Department's policies and practices. There is no indication from the record that the plaintiff communicated his concerns for reasons other than to address these perceived deficiencies. The subject matter of the plaintiff's concerns, such at those involving the misuse of firearms, improper response to bank alarms, and inadequate communication procedures, arguably involves the safety of other officers and the general public. The plaintiff's attention to matters of public concern is well documented and the court finds

that he has made the requisite showing that the topic of his speech was of public concern.

Step 2: Pickering Balancing Test

Having determined that an employee has spoken on a matter of public concern,

> the court must balance the strength of the employee's First Amendment interest, and any parallel public interest in the information which the employee sought to impart, against the strength of the countervailing governmental interest in promoting efficient performance of the public service the government agency or entity must provide through its employees.

O'Connor, 994 F.2d at 912 (citing Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)). Insofar as self-interest is found to have motivated public-employee speech, the communication is accorded less weight than is speech on matters of public concern intended to serve the public interest. Id. at 915 (construing Pickering).

The legitimate interest of the citizenry in the type of information disseminated by the plaintiff represents a public benefit entitled to substantial weight in the Pickering balance. O'Connor, 994 F.2d at 915 (quoting Versarge v. Township of Clinton, 984 F.2d 1359, 1366 (3d Cir. 1993) ("On plaintiff's side of the balance, we must also consider the interests of the public in plaintiff's speech.")). The court has found, supra, that

15

Benoit's expressions involve matters of public safety of traditional concern to the electorate. The strong public concern for such disclosures supplants whatever personal interest Benoit also may have furthered in his communications and, as such, the Pickering scale weighs heavily in favor of First Amendment protection.

The Claremont Police Department, on the other hand, has failed to identify any substantial interest in curtailing the disclosure of matters affecting public or police officer safety. Moreover, the plaintiff's speech was circumscribed to the extent that he voiced concerns through appropriate police channels and not directly to the general public. The court finds that the Department's motivations do not outweigh Benoit's First Amendment interests. Accordingly, the court concludes that the plaintiff's speech is constitutionally protected, at least to the extent that it was directed to matters of public concern.

Step 3: Substantial or Motivating Factor

The third part of the analysis requires the public employee to "show that the protected expression was a substantial or motivating factor in the adverse employment decision." O'Connor, 994 F.2d at 913 (citing Mt. Heathy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). As discussed supra, the

16

plaintiff must come forth with more than a mere allegation of malice.

Benoit has failed to adduce evidence to support his claim that the defendant retaliated against him for his protests of departmental policies and procedures. Rather, the undisputed factual record indicates only that the defendant responded to the plaintiff's concerns in a timely and serious manner. For example, within two and one-half months of the plaintiff's complaint about the handling of rabid animals, Prozzo updated the Department's procedures by issuing a special order. See Prozzo Affidavit, Ex. 12. Similarly, the plaintiff's proposed modification to emergency communication procedures and response to bank alarms where reviewed by Prozzo and it was determined that existing procedures should not be modified. The court finds that Prozzo's response to the plaintiff's grievances does not support an inference that Prozzo was motivated by retaliation.

Likewise, the plaintiff has failed to demonstrate a genuine dispute of fact on the question of whether Prozzo handled the allegation of handgun misuse in anything other than a reasonable manner. In light of the plaintiff's failure to present evidence to the contrary, the court finds that the Department acted without malice in declining to investigate stale claims of

17

misconduct, particularly because no other incidents of handgun misuse were reported during the three-year period that followed.

The plaintiff's subsequent report of handgun misuse on December 26, 1993, concerned a recent incident and it is undisputed that Prozzo promptly ordered an investigation into the unsafe handling of firearms. As a result of the investigation, the offending officer was reprimanded with a written warning, the standard form of discipline for an initial violation of departmental procedure. Moreover, the investigation led to the January 3, 1994, issuance of a special order prohibiting the removal of firearms from secured areas without a justified purpose. Prozzo's handling of these matters reflects sensitivity to both the plaintiff's concerns and the welfare of the Department, and thus stands in stark contrast to the plaintiff's bald assertions that "Chief Prozzo was determined to get rid of me." Benoit Affidavit at ¶ 4.

The court further finds that there is no genuine dispute of material fact that the plaintiff's transfer to the night shift was in any way motivated by a malicious intent to violate the plaintiff's exercise of his First Amendment rights. That is, the plaintiff has failed to adduce evidence to challenge the defendant's well-documented explanation that the plaintiff was reassigned for a legitimate reason, i.e., to staff the night

18

shift with the least senior officer from the day shift.  The plaintiff's failure to support his claim of retaliation is underscored by the fact that Benoit was not reassigned until the issue of his seniority had been resolved through the formal union grievance process.

The final bases for the plaintiff's claim of retaliation are his being ordered to undergo a psychological evaluation and the seizure of his gun and badge.  These actions followed Benoit's testimony before the Commission.  The plaintiff does not dispute that the police chief possesses the discretionary authority to require any officer to submit to a psychological evaluation. Given the level of public trust and unique stress borne by police officers, the court finds that the plaintiff has failed to offer any evidence from which a reasonable jury could find that his protected speech was a substantial or motivating factor in Prozzo's ordering the psychological exam.  This conclusion is consistent with Prozzo's knowledge of the plaintiff's past hospitalization for depression, and the fact that the plaintiff was placed on leave with pay even though the collective bargaining agreement permits suspension without pay.  The mere fact that the psychologist ultimately concluded that the plaintiff was fit for duty does not undermine what was otherwise a non-retaliatory decision to order the evaluation.

The court also finds that the plaintiff has failed to demonstrate a genuine dispute of fact as to whether Prozzo retaliated when he seized the plaintiff's gun and badge while he was on administrative leave pending the outcome of the psychological evaluation. The plaintiff has presented no evidence which taken in a light most favorable to him, reasonably could support a contrary finding.

The court concludes that the plaintiff's bare allegations of retaliation, unsupported by a proper evidentiary basis, do not present a genuine factual dispute whether the plaintiff's protected expressions were a substantial or motivating factor in the adverse employment decisions. Rather, the only conclusion supported by the evidence is that the defendant had an objectively reasonable basis for his conduct.

Based on its review of the record before it, the court finds that the defendant's conduct does not constitute a violation of a clearly established right of which a reasonable person would have been aware. Accordingly, the defendant is entitled to qualified immunity.

## II. Count Two: Retaliatory Constructive Discharge

In count two, the plaintiff alleges that the defendant humiliated him, portrayed his as mentally ill, and singled him

20

out for heightened scrutiny because he engaged in protected activity.[3] The plaintiff further asserts that this conduct constituted an unlawful constructive discharge from his position as a police officer. In its motion, the defendant again responds that he is shielded from liability by the doctrine of qualified immunity.

"`[C]onstructive discharge' has been defined as `an onerous transfer, having the purpose and effect of forcing the transferred employee to quit the employment.'" Pedro-Cos v. Contreras, 976 F.2d 83 (1st Cir. 1992) (quoting Newspaper Guild of Boston v. Boston Herald-Traveler Corp., 238 F.2d 471, 472 (1st Cir. 1956)). The "burden imposed upon the employee must cause, and be intended to cause, a change in his working conditions so difficult or unpleasant as to force him to resign." Id. (quoting Crystal Princeton Refining Co., 222 N.L.R.B. 1068, 1069 (1976)).

Count two asserts liability for the same conduct alleged in count one, albeit under a different legal theory. The court has ruled, supra, that the plaintiff has presented no evidence from which a reasonable jury could find that the defendant retaliated

_____

[3]The plaintiff also alleges that an unnamed lieutenant singled him out for weekly or monthly performance reviews. The court need not consider the allegations for purposes of its qualified immunity analysis because the plaintiff has neither named the lieutenant as a defendant nor asserted that Prozzo is individually liable for another officer's conduct.

21

against him for engaging in protected activities. Thus, to the extent that Prozzo may be sued in his individual capacity for wrongful discharge, such a claim also is barred by qualified immunity.[4]

## Conclusion

The defendant's Motion for Summary Judgment (document no. 13) is granted with respect to counts one and two.[5]

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

November 3, 1995
cc:   James H. Gambrill, Esquire
      John J. Yazinski, Esquire
      Andrew A. Prolman, Esquire
      David A. Garfunkel, Esquire

_____

[4]The defendant also argues that Prozzo, as a police department employee, cannot be liable for wrongful constructive discharge because he was not the plaintiff's employer. Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 24 (citing Cloutier v. Great Atl. & Pac. Tea, Co., 121 N.H. 295 (1991)). The court need not address the argument given the application of qualified immunity.

[5]In count three, the plaintiff claims that the defendant deprived him of his "constitutional rights not to be harmed by a Claremont Police Department policy or custom of failure to train its force of officers to avoid and control situations of clear danger to his safety and well being, and that of the public." Complaint at ¶¶ 37-40. In his motion, Prozzo asserts that count three does not name him as a defendant in his individual capacity. The plaintiff has not disputed this contention and, accordingly, the viability of this claim need not be addressed at this time.